No. 21-3187

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**TREMAYNE DURHAM**,

*Plaintiff-Appellant*,

**v.**

**G. KELLEY et al.**,

*Defendants-Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY 3-21-cv-04565

## PLAINTIFF-APPELLANT'S OPENING BRIEF

Oren Nimni
*Counsel of Record*
RIGHTS BEHIND BARS
416 Florida Ave. #26152
Washington D.C. 20001
(202) 540-0029
oren@rightsbehindbars.org
*Counsel for Plaintiff- Appellant*
*Tremayne Durham*

Dated: April 13, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES .......................................................................... iii

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES ......................................................................2

STATEMENT OF CASE ...................................................................................3

SUMMARY OF ARGUMENT .........................................................................5

STATEMENT OF RELATED PROCEEDINGS .............................................9

STANDARD OF REVIEW ...............................................................................9

ARGUMENT ..................................................................................................10

I.    The District Court Erred in Dismissing Mr. Durham's ADA Claims ...............................10

A.    A. Mr. Durham sufficiently pled that he is a qualified individual  with a disability .........11

B.    The district court applied the wrong standard in determining  whether Mr. Durham pled a violation of the ADA. ..............................................................14

C.    Even if the district court was correct in its application of the  ADA, Mr. Durham sufficient pled that he was subject to  discrimination by reason of his disability. ....................18

II.    The District Court Erred in Dismissing Durham's ADA and RA Claims  on the Basis of State Sovereign Immunity ..........................................................................20

A.    Officials sued in their official capacities are proper defendants  under the ADA and RA. 20

B.    Title II of the ADA abrogates state sovereign immunity in this case..............................21

C.    Defendants waived sovereign immunity for Mr. Durham's RA  claim when they accepted federal funds. ..........................................................................31

III.    Mr. Durham Properly Pled Deliberate Indifference and the District  Court Erred in Dismissing his Eighth Amendment Claim ...............................................32

CONCLUSION ..............................................................................................36

COMBINED CERTIFICATIONS ..................................................................38

CERTIFICATE OF BAR MEMBERSHIP ...............................................38

CERTIFICATE OF COMPLIANCE.........................................................38

IDENTICAL ELECTRONIC AND PAPER COPY CERTIFICATION ...38

VIRUS SCAN CERTIFICATION .............................................................38

CERTIFICATE OF SERVICE ..................................................................39

# TABLE OF AUTHORITIES

**Cases**

*Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) ............................................................9

*Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ........................27, 34

*Bounds v. Smith*, 430 U.S. 817 (1977) .........................................................................29

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494 (D.N.J. 2000)..........18

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007) ..........30, 31, 35, 36

*Brown v. Showboat Atlantic City Propco., LLC*, 2010 WL 5237855 (D.N.J. Dec.16, 2010).......14

*City of Boerne v. Flores*, 521 U.S. 507 (1997)................................................................28

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985) ......................29

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) ..........31

*Cruz v. Beto*, 405 U.S. 319 (1972) ................................................................................29

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ....................................................................36

*Dare v. California*, 191 F.3d 1167 (9th Cir. 1999) ........................................................35

*Dinkins v. Corr. Med. Servs.*, 743 F.3d 633 (8th Cir. 2014) .........................................25

*Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199 (3d Cir. 2008)...................................................................................................11

*Doe 1 v. Upper Saint Clair Sch. Dist.*, 2022 WL 189691 (W.D. Pa. Jan. 21, 2022) ..............17, 19

*Erickson v. Pardus*, 551 U.S. 89 (2007).......................................................................10

*Estelle v. Gamble*, 429 U.S. 97 (1976)....................................................................25, 37

*Farmer v. Brennan*, 511 U.S. 825 (1994)......................................................................38

*Fleck v. Wilmac Corp.*, 2012 WL 1033472, (E.D. Pa. Mar. 27, 2012) ...........................14

*Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285 (3d Cir. 2019).......18, 20, 21, 22

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002).......................................9

*Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018)...........................................................12

*Harnagev. Lightner*, 916 F.3d 138 (2d Cir. 2019) ..........................................................9

*Harris v. Lanigan*, 2012 WL 983749 (D.N.J. Mar. 22, 2012) .......................................15

*Hutto v. Finney*, 437 U.S. 678 (1978) ..........................................................................28

*Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012)........................................25, 36

*Kelly v. Drexel Univ.*, 94 F.3d 102, (3d Cir. 1996) .......................................................15

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000).....................................................27

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002)......................36

*Mastrolia v. Potter*, 2010 WL1752531 (D.N.J. Apr. 27, 2010) ......................................14

*Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759 (3d Cir. 2012)...16

*Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ..........................27, 28, 32

*Owens v. Armstrong*, 171 F. Supp. 3d 316 (D.N.J. 2016)..............................................17

*Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017).........................................................38

*Pell v. Procunier*, 417 U.S. 817 (1974)........................................................................29

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).................................13, 23

*Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791 (9th Cir. 2004) ...........36

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ..........................................19

*Quick v. Albert Einstein Healthcare*, 2007 WL 3085868 (E.D. Pa. Oct. 23, 2007).........14

*Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999) ...........................................................37

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir. 1999).......................................14

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999) ..............................16, 21

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...............................................................passim
*United States v. Georgia*, 546 U.S. 151 (2006)...................................................passim
*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011) .......................................9
*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ........................................23

## Statutes and Regulations

28 C.F.R. § 35.137...........................................................................................17
28 C.F.R. §35.130(b)(1)(ii) ..............................................................................18
28 U.S.C. § 1915A(b)(1) ....................................................................................9
42 U.S.C. § 12102 .............................................................................................11
42 U.S.C. § 12102(2)(A) ...................................................................................12
42 U.S.C. § 12131(2)..........................................................................................12

## Other Authorities

*California Dept. of Justice*, Attorney General's Commission on Disability: Final Report (Dec. 1989)...................................................................................................30
H.R. Rep. No. 485, 101st Cong., 2d Sess. (1990) .........................................................29
S. Rep. No. 116, 101st Cong., 1st Sess. (1989)...........................................................29
*United States Comm'n on Civil Rights*, Accommodating the Spectrum of Individual Abilities (1983) ...................................................................................................29

**JURISDICTIONAL STATEMENT**

The district court had jurisdiction under 28 U.S.C. § 1331 because the claims of the plaintiff, Tremayne Durham, arose from federal statutory and constitutional law. Mr. Durham appeals from a final order issued by the district court on November 8, 2021. A12 [1]. Mr. Durham filed a timely notice of appeal on November 23, 2021. A1-12. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Citations to the Appendix are noted as "A" followed by the page number.

# STATEMENT OF THE ISSUES

1. Whether the district court erred in dismissing Mr. Durham's claims for injunctive relief under the ADA and RA on a § 1915A screening order based on a finding that Mr. Durham, a person with lumbar stenosis who requires a cane to walk, had not alleged that he was a qualifying person with a disability under the ADA and RA.

2. Whether the district court improperly dismissed Mr. Durham's ADA and RA claims for injunctive because Defendants' withholding of cane and shower accommodations did not subject Mr. Durham to "discrimination by reason of his disability."

3. Whether the district court erred in dismissing Mr. Durham's claim for damages under Title II of the ADA after determining that state sovereign immunity protects Defendants from such suit.

4. Whether the district court erred in dismissing Mr. Durham's claims for damages under the RA after determining that state sovereign immunity protects Defendants from such suit.

5. Whether the district court erred in dismissing Mr. Durham's Eighth Amendment claims by holding that he had not alleged that Defendants were deliberately indifferent.

## STATEMENT OF CASE

Tremayne Durham is a prisoner in the New Jersey State Prison in Trenton, New Jersey. Mr. Durham lives with severe limitations on his mobility. After a diagnosis with lumbar stenosis Mr. Durham has been limited in his ability to ambulate and was prescribed a cane to allow him to walk without extreme pain. Despite this diagnosis and prescription, officials in the Trenton facility ordered Mr. Durham to abandon his cane in his cell when he was transferred to a quarantine unit. They then continued to deny him access to his cane for approximately ten days. They did this despite numerous different requests from Mr. Durham for his cane to nurses, doctors, and correctional officers, and despite his reports of excruciating pain when he was forced to walk without his cane. He was also denied access to a necessary shower chair and handrail in the shower. He requested an accessible shower multiple times, and was denied. The result was predictable, Mr. Durham fell in the shower. This fall caused further extreme pain and necessitated emergency personnel to retrieve Mr. Durham and bring him to a medical clinic where they administered medication for his pain. At every possible juncture Mr. Durham made repeated requests for accommodations that were all denied. These requests were based on prescriptions and diagnoses made by Defendants' own personnel who well knew of Durham's disability and the risks attendant with non-accommodation. Because of the actions of Defendants, Mr. Durham filed a suit, *pro se*, on March 9, 2021.

The district court entered a final, pre-service screening order dismissing Mr. Durham's claims on November 8, 2021. The district court's order dismissing Mr. Durham's claims was based on the following reasoning: 1) the district court dismissed Mr. Durham's ADA and RA claims by holding both that he had not sufficiently alleged that he was a qualified individual with a disability and that he had not sufficiently alleged that he was discriminated against by reason of his disability; 2) the district court dismissed Mr. Durham's ADA and RA damages claims by holding that official capacity Defendants are not proper Defendants for ADA and RA claims and further that the state is entitled to sovereign immunity; and 3) the district court dismissed Mr. Durham's Eighth Amendment claim by holding that, although he did properly plead a serious medical need, he had not sufficiently alleged that Defendants were deliberately indifferent. After this dismissal Mr. Durham filed a timely notice of appeal on November 23, 2021.

## SUMMARY OF ARGUMENT

1. The district court erred in holding that that he had not properly pled that he was a qualifying individual with a disability. He pled just that when he alleged facts concerning his underlying condition (lumbar stenosis), his disability as a result of that condition (difficulty and pain ambulating and standing), and an accommodation that assisted him in performing basic life functions while living with his disability (a cane and shower accommodations). Mr. Durham is a quintessential qualifying person with a disability.

2. The district court erred in two ways when it dismissed Mr. Durham's ADA and RA claims on the basis that he had not sufficiently pled that he was subject to discrimination by reason of his disability. The district court first committed error by applying the wrong standard to Mr. Durham's ADA claims. Mr. Durham pled that he had been denied a reasonable accommodation when the facility denied him access to his cane. The ADA imposes an affirmative obligation on Defendants to reasonably accommodate disabled individuals like Mr. Durham. Defendants' failure to reasonably accommodate Mr. Durham constituted disability discrimination under the ADA. However, even if the district court were correct about the standard, it nonetheless erred. Mr. Durham also pled that he was denied his cane, in part, because "he complains too much" and because Defendants did not want to "open his cell for his

cane." In this respect, Mr. Durham went above alleging a failure to accommodation by also demonstrating that he was intentionally punished for needing and requesting his cane – that punishment came in the form of Defendants denying him necessary and reasonable accommodations.

3. The district court erred two respects when it dismissed Mr. Durham's damages claims under the ADA because of state sovereign immunity. First, the district court erred in dismissing Mr. Durham's damages claims against Defendants in their official capacity along with his constitutional claims. Claims made against defendants in their official capacity are claims made against the entity itself, which, unlike in the constitutional context, is the proper defendant in an ADA damages action. The district court further erred when it failed to recognize that Title II of the ADA abrogates state sovereign immunity in this case. State sovereign immunity is abrogated in the prison context for all conduct that also violates the Fourteenth Amendment. Here, Durham pled that the same conduct violated both the ADA and the Eighth (and, by extension, Fourteenth) Amendment. As such, state sovereign immunity is abrogated. Even if this Court were to disagree that Defendants' conduct does not violate the Eighth Amendment, Title II of the ADA categorically abrogates sovereign immunity in the prison context. Title II of

the ADA was enacted to address long historical discrimination against people with disabilities, with a particular focus on the prison context. It was a congruent and proportional enactment and thus abrogates state sovereign immunity in the prison context.

4. The district court erred when it dismissed Mr. Durham's RA claim for damages on state sovereign immunity grounds. Defendants waived state sovereign immunity when they accepted federal funds. As such they are not insulated from state sovereign immunity and Mr. Durham's RA claim for damages should proceed.

5. The district court erred when it dismissed Mr. Durham's Eighth Amendment claims. The district court denied these claims on the basis that Mr. Durham had not sufficiently pled that Defendants had the requisite knowledge to sustain a claim of deliberate indifference. Not so. Mr. Durham pled at least thirteen different times that he made Defendants aware of his need for a cane and that Defendants then denied him access to that cane. Defendants were also aware of the serious injury that could result if Mr. Durham did not have access to his cane because the facility prescribed him the cane and conducted a series

of medical examinations on Mr. Durham which indicated just that: he needed

a cane and would face serious injury without one.

## STATEMENT OF RELATED PROCEEDINGS

Counsel is aware of no related proceedings.

## STANDARD OF REVIEW

This Court's review of a 28 U.S.C. § 1915A(b)(1) dismissal for failure to state a claim is guided by the same *de novo* standard used to evaluate motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

This Court must accept all factual allegations from the complaint as true and construe them in the light most favorable to the plaintiff. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). The Court "must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Harnagev. Lightner*, 916 F.3d 138, 140 (2d Cir. 2019). Section 1915A screening is appropriate only for "facially inadequate complaints." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 n.11 (3d Cir. 2002). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). [2]

---

[2] This standard applies to each issue on appeal discussed below. *Local Rule* 28.1(b).

## ARGUMENT

The district court erred in dismissing Mr. Durham's ADA, RA, and constitutional claims on a pre-service screening order. The district court should be reversed and this case should be remanded for service.

## I.    The District Court Erred in Dismissing Mr. Durham's ADA Claims

The district court dismissed Mr. Durham's ADA[3] claims for prospective relief because "[t]he Complaint…does not allege that Plaintiff is a qualified individual or that he was subject to discrimination by reason of his disability." A23. Both reasons are in error. First, Mr. Durham adequately pled that he is a qualified individual with a disability when he alleged that he was a New Jersey prisoner with limited mobility.

Second, Mr. Durham sufficiently pled that he was denied a reasonable accommodation when he alleged that he was denied access to his cane and shower accommodations. The district court misunderstood the applicable standard under the ADA. Mr. Durham stated a failure to accommodate claim by alleging that he was due a reasonable accommodation for his disability and that this accommodation was repeatedly denied. This failure to accommodate *is* discrimination under the ADA—

---

[3] Except where the distinction is relevant, Mr. Durham uses ADA as shorthand for both his ADA and RA claims for prospective relief. *See Disabled Action of Pa. v. Se. Pa. Trans. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011) (holding that "[i]n light of the similarities between ... the ADA and RA and their implementing regulations, [courts] construe and apply them in a consistent manner.").

animus or differential treatment are not required. Even if they were, however, Mr. Durham adequately pled that he was subject to discrimination because of his disability when he pled that he was prevented from walking without pain because Defendants refused to provide him with his cane for animus-based reasons. The district court should therefore be reversed.

### A.    A. Mr. Durham sufficiently pled that he is a qualified individual with a disability.

"[T]he ADA is a remedial statute, designed to eliminate discrimination against the disabled in all facets of society, and as such, it must be broadly construed to effectuate its purposes." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (internal quotations and citations removed). "To successfully state a claim under Title II of the ADA, a person "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018). A plaintiff has a disability for the purposes of the ADA if he "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; B) a record of such an impairment; or (C) being regarded as having such an impairment…" 42 U.S.C. § 12102. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, *walking*, *standing*, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).

The district court dismissed Mr. Durham's ADA claim in part because he "does not allege that Plaintiff is a qualified individual." To the extent that the district court dismissed Mr. Durham's claim because it held that he had not pled that he was a "qualified individual," the district court erred. Mr. Durham pled he was a qualified individual simply by pleading that he was a state prisoner. A29. The ADA defines the term, "qualified individual with a disability" to include all individuals with disabilities "who…meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). It is black letter law that the ADA applies to state prisoners, who are eligible to receive the programs, services, and activities offered by the prisons where they are confined. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that the ADA "defines the term to include anyone with a disability" and that state prisoners with disabilities are qualified individuals entitled to a prison's programs or activities). If the district court's determination was based on a holding that Mr. Durham is not a qualified individual, that reasoning is directly contradicted by *Yesky*.

To the extent the district court intended, without explicitly stating, to dismiss Durham's claim on the basis that he did not have a qualifying disability under the ADA, the district court also erred. Mr. Durham pled that he was diagnosed with lumbar stenosis by Defendants' own physicians. A39. He further pled that the condition caused him extreme difficulty and pain ambulating and that, as a result, he was prescribed a cane to accommodate his disability. *Id*. There is no question that walking and standing are major life activities under the ADA. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 185 (3d Cir. 1999) (noting that "walking and standing are major life activities"). "[C]ourts have likewise found that an individual's ability to walk or stand is substantially impaired based on the use of a walking aid." *Fleck v. Wilmac Corp.*, 2012 WL 1033472, at *7 (E.D. Pa. Mar. 27, 2012); *see Quick v. Albert Einstein Healthcare*, 2007 WL 3085868, at *12 (E.D. Pa. Oct. 23, 2007) (citing individual's use of a cane to aid in walking as indicative of limiting his ability to walk); *Brown v. Showboat Atlantic City Propco., LLC*, 2010 WL 5237855, at *13–14 (D.N.J. Dec.16, 2010) (finding that an individual's inability to walk more than sixty feet without the assistance of a medical device constituted a disability under the ADA); *Mastrolia v. Potter*, 2010 WL1752531, at *6 (D.N.J. Apr. 27, 2010) (same).

Further, Mr. Durham pled that he 1) was substantially limited in walking and standing, A39-40; 2) had a record of being unable to walk or stand without

assistance, *id*.; and 3) was generally regarded, by Defendants, as having such a disability. 39-45. These allegations satisfy not just one, but all of the possible methods of pleading a disability. *See Kelly v. Drexel Univ*., 94 F.3d 102, 105 (3d Cir. 1996) (describing the three ways in which a plaintiff can plead disability under the ADA) (citing 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)). It should be uncontroversial, therefore, that Mr. Durham is both a qualified individual and has a disability. In fact, the District Court for the District of New Jersey has previously allowed identical claims to proceed. *See Harris v. Lanigan*, 2012 WL 983749, at *6 (D.N.J. Mar. 22, 2012) (allowing the ADA claim of a *pro se* prisoner to proceed where she had been denied access to a cane). For these reasons the district court's dismissal of Mr. Durham's ADA claims should be reversed.

### B.   The district court applied the wrong standard in determining whether Mr. Durham pled a violation of the ADA.

The district court additionally dismissed Mr. Durham's ADA claims because he did not allege that "he was subject to discrimination by reason of his disability." A29. This is incorrect. Mr. Durham's claim most obviously plead the failure to accommodate, not intentional discrimination or disparate treatment. He therefore need not plead that he was treated differently because of his disability, but, rather, simply that he was denied a reasonable accommodation. Evaluated under the correct failure to accommodate rubric, Mr. Durham has sufficiently pled a violation of the ADA.

This Court has long recognized two paths for alleging violations of ADA rights under Title II: intentional discrimination, akin to race or gender discrimination, and the failure to accommodate. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (holding that "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."). A plaintiff can plead one or both theories, as "a failure to accommodate [is] an independent basis for liability under the ADA and RA." *Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (per curium); *see also Owens v. Armstrong*, 171 F. Supp. 3d 316, 331–32 (D.N.J. 2016). To pursue a failure-to-accommodate claim against a public entity, a qualified individual with a disability must allege that "the public entity failed to provide a reasonable accommodation." *Doe 1 v. Upper Saint Clair Sch. Dist.*, 2022 WL 189691, at *13 (W.D. Pa. Jan. 21, 2022) *citing Muhammad*, 483 F. App'x at 763–74. Finally, a plaintiff must allege causation: that "but for the failure to accommodate, [Plaintiffs] would not be deprived of the benefit[s] [he] seek[s]." *Id*.

Here, Mr. Durham pled a failure to accommodate claim and the district court failed to conduct the appropriate inquiry into whether Mr. Durham's accommodation

was reasonable. On that basis alone, the district court should be reversed for consideration under the appropriate standard.

Any consideration under the correct standard, however, makes clear that Mr. Durham has adequately pled a failure to accommodate claim. Mr. Durham requested two accommodations: a cane and a shower chair. A40-42 (cane); A41-42(shower). Both were reasonable. "Whether an accommodation is reasonable involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 521 (D.N.J. 2000), *opinion amended on reargument*, 130 F. Supp. 2d 610 (D.N.J. 2001) (internal citations and quotations omitted).

Here, the cane had already been prescribed and given to Mr. Durham during his detention at the facility and an accessible shower is a common, unobtrusive, accommodation for people with impaired mobility. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (holding a request for reasonable accommodations so that a prisoner with disabilities can take a shower "just like able-bodied inmates" to be a claim for disability discrimination under Title II). Further, both accommodations were necessary to prevent discrimination against Mr. Durham because of his disability. As Mr. Durham clearly pled, and informed Defendants, he needs his cane to ambulate and the shower chair to access a shower. A40-42. The

necessity of the accommodations is only further underscored by the pain and injury Mr. Durham suffered when they were denied. A43. And neither fundamentally alter the nature of the program at issue. Here Mr. Durham simply sought access to safely ambulating around the facility and safely showering. *See Pierce v. County of Orange*, 526 F.3d 1190, 1196 (9th Cir. 2008) (holding that facility violated the ADA where mobility-impaired prisoners were denied meaningful access to certain prison facilities, including bathrooms, showers, exercise and other common areas). Finally, no prison programs would be altered in any meaningful way by the provision of his modest requested accommodations. Indeed, the implementing regulations of Title II expressly require public entities to "permit individuals with mobility disabilities to use … canes … in any areas open to pedestrian use." 28 C.F.R. § 35.137.

The only remaining question for the Court after determining that Mr. Durham's requested accommodations was plausibly reasonable, is evaluating if he has pled that "but for the failure to accommodate, [he] would not be deprived of the benefit[s] [he] seek[s]." *Doe 1* 2022 WL 189691, at *13 (citations removed). He pled precisely that when he pled that, but for the denial of his cane, he would have been able to ambulate in the facility without pain, and but for the denial of the cane or shower chair he would have been able to take a shower and not collapsed in pain requiring emergency medical care. A42-43. ADA Title II regulations impose upon Defendants a duty to afford prisoners with disabilities an "opportunity to participate

in or benefit from" programs and services equal to that provided to non-disabled inmates. 28 C.F.R. §35.130(b)(1)(ii). Accordingly, the ADA does not require disabled prisoners to endure excruciating pain or danger in order to access the same services that nondisabled prisoners are offered and can access with ease. *Furgess*, 933 F.3d at 288 (prisoner was physically capable of getting into non-handicapped shower but doing so was dangerous).

Nothing at this stage supports a categorical holding that Mr. Durham's requested accommodations were unreasonable. At the very least, further factual development is necessary to determine the reasonableness of the requested accommodations. Such an inquiry can only happen after discovery and is not amendable to resolution on a § 1915 screening order.

### C.    Even if the district court was correct in its application of the ADA, Mr. Durham sufficient pled that he was subject to discrimination by reason of his disability.

The district court also erred when it determined that Mr. Durham had not properly pled a violation of the ADA as to intentional discrimination. Like all ADA claims, to properly plead a claim under this theory of the ADA a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288–89. Not only has Mr. Durham pled that he was denied safe access to services such as the shower

because of his disability, he has alleged that Defendants intentionally discriminated against him because of his disability. He has pled that Defendants not only knew of his needs but were annoyed or upset by their duty to accommodate him and withheld disability accommodations out of animus. He alleged, for example, that Defendant Goodwin stated that "Plaintiff complains too much were not opening his cell for his cane." *A40*. And that Defendant Jovanovic said "Plaintiff is an asshole he gets nothing" regarding a request to provide Mr. Durham with his cane. *Id*. Because Mr. Durham pled that he was denied access to walking and showering by reasons of his disability, and because he has additionally pled that Defendants denied him such access as part of "an adverse action motivated by prejudice and fear of disabilities" in clear violation of the ADA, *Taylor*, 184 F.3d at 306, he has also satisfied the pleading standard under for an intentional discrimination ADA claim.

This Court already addressed a similar claim in *Furgess*. *Furgess* held that the plaintiff had been discriminated against by reason of his disability when he was denied access to a shower because of the facility's refusal to provide him a handicap accessible shower. *Furgess*, 933 F.3d at 291 (noting that "as to causation, the sole cause of Furgess's deprivation of a shower was his disability."). Here too, there is no other reason beyond his disability (and Defendants' actions) that Mr. Durham was denied the ability to walk and shower.

## II.    The District Court Erred in Dismissing Durham's ADA and RA Claims on the Basis of State Sovereign Immunity

The district court dismissed "Plaintiff's claims to the extent they seek non-injunctive relief against Defendants in their official capacities because the Eleventh Amendment bars such claims." A17. Here the district court erred in two ways. First, Defendants, in their official capacities, *are* proper defendants in a damages action under the ADA. Second, the district court erred when it failed to recognize that state sovereign immunity has been abrogated in this context.

### A.    Officials sued in their official capacities are proper defendants under the ADA and RA.

As a threshold matter, the district court erred when it ruled that Defendants, sued in their official capacity, are improper defendants for a damages action under the ADA. The opposite is true: official capacity defendants and facilities themselves are the only proper defendants for an ADA action, which cannot be brought against defendants in their individual capacities. *See Yeskey*, 524 U.S. at 208; *see also Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 530 (E.D. Pa. 2001) (noting that ADA and RA suits are properly brought against a "public entity"). There is no substantive difference for purposes of the ADA between naming an official capacity defendant and naming the public entity, as "naming a government official in his or her official capacity is the equivalent of naming the entity that employs him or her." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Because Mr.

Durham named Defendants in their official capacities, A29-36, which is equivalent to naming the public entity itself, Defendants here are proper for Durham's ADA and RA claims.[4]

### B.    Title II of the ADA abrogates state sovereign immunity in this case.

The district court held that Durham's ADA claims for damages should be dismissed because the Defendants are protected by state sovereign immunity. This is incorrect. Title II of the ADA abrogates state sovereign immunity where, as here, there is a companion constitutional violation arising out of the same conduct. And even were this Court to disagree that a companion constitutional violation exists, Title II abrogates state sovereign immunity in the prison context.

In *United States v. Georgia*, the Supreme Court set out a three-part test for determining whether state sovereign immunity has been abrogated for particular claims under Title II of the ADA. 546 U.S. 151 (2006). The test requires district courts to determine on a claim-by-claim basis "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported

---

[4] Plaintiff-Appellant acknowledges that the same is not true for his §1983 claims which may only be properly pled against Defendants in their individual capacities and that his claims survive only to that extent.

abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id*. at 159. The district court simply failed to conduct this analysis. Properly analyzed, Durham's claims satisfy both prong two and prong three of the *Georgia* test.

### i. Title II of the ADA abrogates state sovereign immunity where the same conduct also violates the Constitution

Part one of the test articulated in *Georgia* requires a court to identify "which aspects of the State's alleged conduct violated Title II." *Id*. Mr. Durham has alleged that he is a qualified individual with a disability who was deprived access to the prison's programs, services, and activities when Defendants denied him the reasonable accommodations of a cane and shower chair. 40-42. These allegations state a violation of Title II and demonstrate the aspects of Defendants' conduct that violated its provisions. *See supra* at 11-19.

Part two of the *Georgia* test asks this Court to determine "to what extent such misconduct also violated the Fourteenth Amendment." *Id*. Mr. Durham has pled that the same conduct giving rise to his ADA claims also gives rise to his Eighth Amendment claims.[5] *See infra* at 32-36. Multiple courts have held that the "refusal of prison officials to accommodate [a prisoner's] disability-related needs in such

---

[5] Durham's Eighth Amendment claims are incorporated against the state of New Jersey through the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 101 (1976) (noting that the Eighth Amendment applies to the states through the Fourteenth Amendment).

fundamentals as mobility, hygiene, medical care, and virtually all other prison programs … independently violate[] the provisions of § 1 of the Fourteenth Amendment." *Georgia*, 546 U.S. at 157; *see also Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014) (listing cases finding damages awards for inmates missing meals and being denied access to toilet facilities); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012).

Where allegations satisfy both the first and second step of *Georgia*, state sovereign immunity is abrogated. *Georgia,* 546 U.S. at 159. Because here Mr. Durham has alleged that Defendants' actions constituted both a violation of the ADA and a violation of the Eighth Amendment, he has satisfied the requirements of *Georgia.*

> *ii. Even if Mr. Durham did not adequately plead a companion constitutional claim, Title II categorically abrogates state sovereign immunity in the prison context.*

To the extent this Court reaches step three of the *Georgia* analysis and addresses the substantive underlying question of whether, for the class of conduct alleged here, Congress properly abrogated state sovereign immunity in enacting Title II of the ADA, it should rule that Congress has properly abrogated state sovereign immunity in the prison context. Mr. Durham's damages claim should therefore proceed even absent pleading a companion constitutional violation.

To determine whether Congress properly abrogated state sovereign immunity, courts "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (*quoting Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73 (2000)). The Supreme Court has repeatedly held that Congress expressly intended to abrogate state sovereign immunity in enacting Title II of the ADA. *See, e.g., Lane*, 541 U.S. at 518; *see also Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001). The only question, then, is whether Congress had the power to manifest that intent.

Section 5 of the Fourteenth Amendment is an affirmative grant of legislative power, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000), that gives Congress the "'authority both to remedy and to deter violation of [Fourteenth Amendment] rights … by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text,'" *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727 (2003) (*quoting Garrett*, 531 U.S. at 365). The Supreme Court has held that Section 5 "is a 'broad power indeed,'" *Lane*, 541 U.S. at 518 (citations omitted), empowering Congress not only to remedy past violations of constitutional rights, but also to enact "prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter

unconstitutional conduct," *Hibbs*, 538 U.S. at 727-728. Congress's power under Section 5 sweeps so broadly that it also may prohibit "practices that are *discriminatory in effect*, if not in intent, to carry out the basic objectives of the Equal Protection Clause." *Lane*, 541 U.S. at 520 (emphasis added). There is no exception to this broad authority for the state prison context. *See Hutto v. Finney*, 437 U.S. 678, 693-699 (1978).

Despite the sweeping nature of Congress's authority under Section 5, there are limits. In evaluating whether legislation enacted under Section 5 is proper, courts look to the test set out by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997) and clarified in *Lane*. The Supreme Court laid out a three-step method for determining whether legislation enacted pursuant to Section 5 authority is valid: (1) identify the right(s) at issue, *Lane*, 541 U.S. at 522; (2) identify the pattern of violations that the legislation is designed to remedy and prevent, *id*. at 523-34; and (3) determine whether the legislation is congruent and proportional to the pattern of violations. *Id*. at 530.

*Lane* specifically addressed this question for Title II of the ADA. Under step 1 of the *Boerne* test, *Lane* recognized that Congress, upon enacting Title II, sought to enforce the Fourteenth Amendment's "prohibition on irrational disability discrimination." *Lane*, 541 U.S. at 510. Primarily, Title II seeks to enforce the Constitution's prohibition on irrational disability discrimination under the Equal

Protection Clause, *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 448 (1985), but many rights beyond equal protection are implicated for disabled people in prisons, including: the right to pursue a religious faith in a reasonable manner, *Cruz v. Beto*, 405 U.S. 319, 322 (1972); the right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977); and the right to speech not inconsistent with penological objectives, *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also United States v. Georgia*, 546 U.S. 151, 162 (2006) (Stevens, J. concurring) ("While it is true that cases involving inadequate medical care and inhumane conditions of confinement have perhaps been most numerous [challenges brought by prisoners], courts have also reviewed myriad other types of claims by disabled prisoners, such as allegations of the abridgment of religious liberties, undue censorship, interference with access to the judicial process, and procedural due process violations."). This Court has read *Lane* to establish that Congress identified a sufficient historical record of unconstitutional disability discrimination for Title II as a whole to survive step two. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 551 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007).

The remaining question, then, is whether "the rights and remedies created by the statute are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress." *Id*. at 551 (internal quotations removed). In evaluating whether Title II is an appropriate

response to past unconstitutional treatment of individuals with disabilities, the Court in *Lane* declined to address the congruence and proportionality of Title II as a whole, upholding it instead as "valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services," 541 U.S. at 531. Though *U.S. v. Georgia* failed to reach this analysis in the prison context, this Court's decision in *Bowers* provides a clear roadmap. In *Bowers*, a student athlete alleged that he was denied access to an education when he was denied a scholarship because of a learning disability that prevented him from meeting certain requirements of the NCAA. *Bowers*, 475 F.3d at 530. This Court held that despite there being no viable constitutional violation in *Bowers*, Title II nonetheless abrogated state sovereign immunity. *Id*. at 554. In determining that Title II was congruent and proportional there, this Court looked at the right to be free from arbitrary and unreasonable disability discrimination and at past discrimination against those with disabilities. *Id.*

This Court went on to note that, unlike Title I, Title II is a much more tailored and thus proportional statute. This Court held such because:

> [First,] the statute only protects qualified individuals with a disability. Second, Title II permits States to limit participation in their programs and activities for all other lawful reasons. Third, Title II only requires States to make "reasonable modifications" to accommodate the disabled, thus protecting the States from having to compromise essential eligibility criteria for public programs. Finally, States are able to make available other accommodations if structural modifications of physical structures are too burdensome.

*Id*. at 555–56; *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 490 (4th Cir. 2005) (holding that "[w]hereas Title I requires the States to "mak[e] existing facilities used by employees readily accessible to and usable by individuals with disabilities," 42 U.S.C. §§ 12112(5)(B), 12111(9), Title II imposes no such categorical requirement.").

*Bowers* decides this issue and this case. Even if the past harms identified here only rose to the same level as this Court identified in *Bowers*, this Court should hold Title II equally valid in the prison context. But this context presents an even more compelling study of congruence and proportionality. First, in the prison context, a variety of rights subject to higher scrutiny are in play. This Court must consider not only the right to be free from arbitrary and unreasonable discrimination, as was considered in *Bowers*, but also the right to be free from cruel and unusual punishment and various substantive and procedural Due Process rights. "Because the standard for demonstrating the constitutionality of [a heightened scrutiny test] is more difficult to meet than the Court's rational-basis test, it is therefore easier for Congress to show a pattern of state constitutional violations." *Hibbs*, 538 U.S. at 736.

Second, the history of past disability discrimination specific to the prison context is clear and compelling. The information before Congress when enacting the ADA documented a widespread and deeply-rooted pattern of prisons and correctional officials' deliberate indifference to the health and medical needs of

prisoners with disabilities. The relevant House Report concluded that persons with disabilities, such as epilepsy, are "frequently inappropriately arrested and jailed" and "deprived of medications while in jail." H.R. Rep. No. 485, 101st Cong., 2d Sess. (1990), Pt. 3, at 50. The report of the United States Civil Rights Commission that was before Congress, *see* S. Rep. No. 116, 101st Cong., 1st Sess. (1989) at 6; H.R. Rep. No. 485, 101st Cong., 2d Sess. (1990), Pt. 2, at 28, also identified the "[i]nadequate treatment … in penal and juvenile facilities," and "[i]nadequate ability to deal with physically handicapped accused persons and convicts" as serious problems. *United States Comm'n on Civil Rights*, Accommodating the Spectrum of Individual Abilities 168 (1983) (Spectrum). Court decisions and the historical and legislative record are replete with specific patterns and examples of unconstitutional disability discrimination specific to prison, even outside of the Eighth Amendment context. *See e.g. Georgia*, 546 U.S. at 161–62 (Stevens, J. concurring) ("[T]he history of mistreatment leading to Congress' decision to extend Title II's protections to prison inmates was not limited to violations of the Eighth Amendment.") For example, the Supreme Court has noted that prisoners with developmental disabilities were subject to longer terms of imprisonment than other prisoners. *Garrett*, 531 U.S. at 391–424 (Appendices to opinion of Breyer, J., dissenting) (listing submissions made to Congress by the Task Force on the Rights and Empowerment of Americans with Disabilities). Prisoners with disabilities had also been unnecessarily "confined

to medical units where access to work, job training, recreation and rehabilitation programs is limited." *California Dept. of Justice*, Attorney General's Commission on Disability: Final Report 103 (Dec. 1989).

As such, Title II is especially congruent and proportional to the prison context, where constitutional concerns pervade almost every aspect of daily life and where unique affirmative obligations arise. Prisons are constitutionally required to provide people inside with adequate food, shelter, and medical care. But not only is the pattern of violations more pervasive in the prison context than in other contexts (including higher education), it is also more "difficult and intractable." Violations against prisoners are more difficult to regulate because they are hidden from the public eye, and prisoners are in many cases unable to defend themselves because of their inability to access the political process. Because of the legion and intractable constitutional concerns, the well-documented past harms, and the targeting of Title II at addressing those harms, Title II is congruent and proportional in the prison context.

For the class of violations at issue here, Title II therefore meets the test articulated in *Lane*. There are numerous important constitutional rights at issue in the prison context; there is strong evidence of past discrimination; and Title II is congruent and proportional to the need to address this discrimination in the prison

context. Because of this, prisoner-plaintiffs need not plead a companion constitutional violation to proceed with a Title II claim for damages.

In *Bowers* this Court "join[ed] several sister circuits in holding that Congress acted within its Constitutional authority in abrogating sovereign immunity under Title II of the ADA." *Bowers*, 475 F.3d at 556. It should do so again here and hold with the only other circuit to squarely address the issue. *See Dare v. California*, 191 F.3d 1167, 1173-75 (9th Cir. 1999) ("[I]n enacting Title II of the ADA, Congress validly abrogated state sovereign immunity pursuant to its Fourteenth Amendment powers"); *see also Phiffer v. Columbia River Correctional Institute*, 384 F.3d 791, 792-93 (9th Cir. 2004) (reaffirming *Dare*'s holding after *Tennessee v. Lane*, 541 U.S. 509, 530-31 (2004)).

### C. Defendants waived sovereign immunity for Mr. Durham's RA claim when they accepted federal funds.

The district court also erred when it dismissed Durham's RA claim on Eleventh Amendment sovereign immunity grounds. It is well-established in this Circuit that a state waives sovereign immunity for suits brought under the RA when it accepts federal funds. *See Bowers* 475 F.3d at 545; *see also Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 176 (3d Cir. 2002). There can be no dispute that New Jersey generally, and the New Jersey Department of Corrections specifically, accepts federal funds. "Every State . . . accepts federal funding for its prisons." *Cutter v. Wilkinson*, 544 U.S. 709, 716 n.4 (2005); *see also Jaros* 684 F.3d

at 671 & n.5 ("all states accept [federal funds] for their prisons" as necessary for waiver of sovereign immunity on RA claim). Defendants have therefore waived sovereign immunity as a defense to RA claims.

### III.    Mr. Durham Properly Pled Deliberate Indifference and the District Court Erred in Dismissing his Eighth Amendment Claim

It is well settled that:

> deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 104–05 (internal citations removed).

In order to plead a deliberate indifference claim, "plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). This Court has made clear that deliberate indifference claims can arise in several circumstances, including, "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Id.* Further, prison officials may be liable for Eighth Amendment claims where they "deny reasonable requests

for medical treatment ... when such denial exposes the inmate to undue suffering or the threat of tangible residual injury." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (cleaned up).

Here, the district court correctly held that Mr. Durham meets the "serious medical need" prong of the Eighth Amendment test. A20. The district court erred, however, in determining that Mr. Durham had not sufficiently alleged deliberate indifference.

Deliberate indifference includes both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires Durham to plead that he was at "substantial risk of serious harm." *Id*. The subjective component requires allegations that the individual defendants were aware of such a risk but disregarded it. *See id*. at 847. Whether a prison official had the requisite knowledge is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*.

Here Mr. Durham pled allegations that satisfy both the objective and subjective components. As to the objective risk of serious harm component, Durham pled that he needed his cane and an accessible shower, and that without those accommodations he would suffer significant pain and an inability to walk or stand,

potentially leading to further injury. 39-43. As to the subjective component, Mr. Durham alleged that Defendants were aware of the risk and ignored it: they were and they did.

Start with the medical staff. They diagnosed Mr. Durham with lumbar stenosis and prescribed him his cane. A39-40. In so doing, Defendants both 1) had knowledge of Mr. Durham's disability, recognizing his serious medical need for the cane; and 2) understood that without the cane Mr. Durham would be in pain and at risk for injuries that might befall any mobility-impaired individual prescribed such a device. Nevertheless, when Mr. Durham was placed on the quarantine unit, they denied him all of his requested accommodations. On March 23, 2020, Mr. Durham told Nurse West that he needed his cane and was experiencing excruciating back pain. A40. She responded that there was nothing she could do for his back pain and denied him his cane. *Id*. On March 27, 2020, he told Nurse Springer about his back pain and need for a cane, again no accommodation was provided. A41. On March 28, 2020, Mr. Durham again told Nurse West of his need for a cane and asked for use of a shower chair. A41. He informed her that he needed these accommodations because of his lumbar stenosis. *Id*. No accommodation was provided. *Id*. Also on March 28, 2020, Mr. Durham told Doctor John Doe #1 about his back pain and need for a cane. A41-42. The doctor informed Durham that he could not help him. *Id*. On March 31, 2020, Mr. Durham told Nurse Ebo that he was having acute back pain and needed a cane.

A42. No accommodation was provided and without a cane or shower chair Mr. Durham fell and required emergency medical attention. *Id*.

If Defendants' own prescription for a cane were not enough to create the requisite knowledge, this Court should next look to the correctional staff and the numerous times that Mr. Durham pled that he informed Defendants of his need for his cane and shower chair. Each of the thirteen times Mr. Durham requested his cane and each of the two times he requested shower accommodations he made Defendant correctional officers aware of his needs and of the risks associated with leaving those needs unmet. *See* A40 (Durham requests cane from Officer Doyle, Doyle orders Durham to abandon his cane); *Id*. (Durham informs Officer Correa that he is having back pain and needs his cane. Correa denies the accommodation); *Id*. (Officer Goodwin, hearing of Durham's request for a cane, states "[He] complains too much" as a reason for not providing his cane); *Id*. (Officer Jovanovic, upon hearing of Durham's request for accommodation, states "[He is an asshole, he gets nothing"); A40-41 (again requesting a cane from Officer Correa and again being denied); A41 (Durham requests a cane from Officer Vega and indicates that he has severe back pain and needs the cane. No accommodation was provided); A41 (Durham informs Officer Gray that he needs a cane and shower chair to accommodate his back condition. Both accommodations are denied.); A42 (Durham request cane to accommodate back pain form Officer Rodriguez. Accommodation denied.); A42

(Durham requests cane to accommodate back pain from Officer Kelley. Accommodation denied.). Each time he requested action from Defendants Mr. Durham made it known that the consequence of Defendants' action was excruciating pain. Mr. Durham could not have provided more notice. It strains credulity to assert that officials could have prescribed Mr. Durham the cane, known it was necessary, known he needed it to ambulate, been repeatedly informed by Mr. Durham of his need for his cane and of the pain that would result from not having it, and nonetheless somehow been unaware of the serious risk of harm to Mr. Durham when he was forced to shower without accommodation or ambulate without a cane.

The final question is if Defendants, aware of this risk, nonetheless disregarded it. They did. *See supra* 34-35. Mr. Durham pled numerous allegations of their denial of his cane or shower accommodations that show a complete disregard for the risk of harm to Mr. Durham. Defendants' disregard of the risk of harm to Mr. Durham is best encapsulated by Defendant Jovanovic, who, after learning that Mr. Durham was in pain and requesting his cane demonstrated his disregard by stating "[He] is an asshole he gets nothing." A40.

## CONCLUSION

For the foregoing reasons Mr. Durham respectfully requests that this Court reverse the district court's order and remand this matter for further proceedings and trial.

Dated: April 13, 2022                            Respectfully submitted,

                                                 */s/ Oren N. Nimni*
                                                 Oren Nimni
                                                 *Counsel of Record*
                                                 RIGHTS BEHIND BARS
                                                 416 Florida Ave. #26152
                                                 Washington D.C. 20001
                                                 (202) 540-0029
                                                 oren@rightsbehindbars.org

## COMBINED CERTIFICATIONS

### CERTIFICATE OF BAR MEMBERSHIP

I hereby certify under Local Appellate Rule 46.1 that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

### CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume requirements and limitations of Federal Rule of Appellate Procedure 32(a). This brief contains 8,444 words in 14-point Times New Roman font.

### IDENTICAL ELECTRONIC AND PAPER COPY CERTIFICATION

I hereby certify that the text of the electronic brief is identical to the text in the paper copies.

### VIRUS SCAN CERTIFICATION

I hereby certify that this brief complies with Local Appellate Rule 31.0(c) because a virus detection program has been run on the file and no virus was detected.

Dated: April 13, 2022

/s/ *Oren Nimni*

Oren Nimni

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. No opposing party appeared in the court below upon whom service could be affected.

Dated: April 13, 2022

/s/ *Oren N. Nimni*

Oren Nimni
*Counsel of Record*
RIGHTS BEHIND BARS
416 Florida Ave. #26152
Washington D.C. 20001
(202) 540-0029
oren@rightsbehindbars.org

No. 21-3187

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### TREMAYNE DURHAM,

*Plaintiff-Appellant,*

**v.**

### G. KELLEY et al.,

*Defendants-Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY 3-21-cv-04565

## Appendix
## Volume 1 of 2 (A1-24)

Oren Nimni
*Counsel of Record*
RIGHTS BEHIND BARS
416 Florida Ave. #26152
Washington D.C. 20001
(202) 540-0029
oren@rightsbehindbars.org

# TABLE OF CONTENTS

## VOLUME ONE

| DOCUMENT | PAGE |
|---|---|
| Notice of Appeal as to Order of Dismissal by Tremayne Durham<br>Dkt. No. 7 (November 23, 2021) | A1-10 |
| Order Dismissing Plaintiff's Complaint Without Prejudice<br>Dkt. No. 3 (October 13, 2021) | A11 |
| Order That This Matter is Dismissed with Prejudice<br>Dkt. No. 6 (November 8, 2021) | A12 |
| Opinion<br>Dkt. No. 2 (October 13, 2021) | A13-24 |

## VOLUME TWO

| DOCUMENT | PAGE |
|---|---|
| District Court Docket (last accessed April 13, 2022) | A25-27 |
| Complaint<br>Dkt. No. 1 (March 9, 2021) | A28-76 |

RECEIVED

NOV 2 3 2021

AT 8:30_____M
WILLIAM T. WALSH
CLERK

In the United States District

Court For the District of New Jersey

| | |
|---|---|
| TREMAYNE DURHAM, | : |
| Plaintiff | : |
| | :CIVIL ACTION NO. |
| | :21-4565(MAS)(LHG) |
| V. | : |
| G. KELLEY, et al; | : NOTICE OF APPEAL |
| Defendants | : |
| _____ | : |

Notice is hereby given that Tremayne Durham,plaintiff in the
above named case, herevby appeal to the United States Court of
Appeals **for the Third Circuit**(from an order dismissing
plaintiffs civil complaint with prejudice for failure to state a
claim of relief entered in this action on the 8th day of
November,2021.

Dated:November __18__ ,2021

Tremayne Durham

#647007/OS01613467

New Jersey State Prison

P.O. Box 861,Trenton NJ 08625

**A1**

THIS FORM MUST BE USED BY A PRISONER APPLYING TO PROCEED IN FORMA PAUPERIS IN A CIVIL RIGHTS CASE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED

NOV 23 2020

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Tremayne Durham

(Plaintiff in this action)

: **AFFIDAVIT OF POVERTY**
: **and ACCOUNT CERTIFICATION**
: **(CIVIL RIGHTS)**

v.

G. Kelley, et al,

: Civil Action No. _____
:           (To be supplied by the Clerk of the Court)
:
: DNJ-Pro Se-007-A-(Rev.05/2013)
:
:
:

(Defendant(s) in this action)

:

**Instructions:**

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $50) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915. See Local Civil R. 5.1(f). A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months. See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid, regardless of the outcome of the proceeding. See 28 U.S.C. § 1915(b).

The prisoner must complete all questions in the following affidavit, sign and date the affidavit, and then obtain the signature of the appropriate prison official who certifies the prison account statement. After the appropriate prison official certifies your prison trust fund account statement(s), you must attach the prison account statement(s) to this application, for each prison or jail wherein you were incarcerated during the previous six months. If your application to proceed in forma pauperis is incomplete, then the Court may enter an order denying your application without prejudice and administratively terminating your case without filing the complaint.

**A2**

THIS FORM MUST BE USED BY A PRISONER APPLYING TO PROCEED IN FORMA PAUPERIS IN A CIVIL RIGHTS CASE

In support of this application, I state the following under the penalty of perjury:

1.  I, _Tremayne Durham_ (print your name), declare that I am the

    ☑ Plaintiff / movant      ☐ Other

in the above-entitled proceeding; that, in support of my request to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty, I am unable to prepay the costs of said proceeding or give security therefor; that I believe I am entitled to relief.

2.  The nature of my claim or the issues I intend to present on appeal are briefly stated as follows:

    _42 U.S.C.S. 1983_

3.  List dates and places of confinement for the immediately preceding six months:

    | Dates of Confinement | Places of Confinement |
    | --- | --- |
    | _2009 to present_ | _New Jersey State Prison_ |

    For each institution in which you have been confined for the preceding six months, you must obtain a copy of your prison account and the signature of the appropriate prison official (see certification on p. 3).

4.  Are you employed at your current institution?                           ☑ Yes      ☐ No

    Do you receive any payment or money from your current institution?      ☑ Yes      ☐ No

    If Yes, state how much you receive each month: _approximately $30 monthly_

5.  In the past 12 months, have you received any money from any of the following sources?

    |     |                                                      |        |       | Amount |
    | --- | ---------------------------------------------------- | ------ | ----- | ------ |
    | a.  | Business, profession, or other self-employment       | ☐ Yes  | ☑ No  |        |
    | b.  | Rent payments, interest, or dividends                | ☐ Yes  | ☑ No  |        |
    | c.  | Pensions, annuities, or life insurance payments      | ☐ Yes  | ☑ No  |        |
    | d.  | Disability or workers compensation payments          | ☐ Yes  | ☑ No  |        |
    | e.  | Gifts or inheritances                                | ☐ Yes  | ☑ No  |        |
    | f.  | Any other sources                                    | ☐ Yes  | ☑ No  |        |

DNJ-ProSe-007-A-(Rev.05/2013)

A3

THIS FORM MUST BE USED BY A PRISONER APPLYING TO PROCEED IN FORMA PAUPERIS IN A **CIVIL RIGHTS** CASE

6.  Other than your prison account, do you have cash or a checking or savings account in your name?

    ☐ Yes ☑ No

    If "Yes," state the total in the account at this time: _____

7.  Do you own any other assets or property? ☐ Yes ☑ No

    If "Yes," please describe:_____

    _____

8.  I, **Tremayne Durham, #647007 / SBI # OSO1613467**

    (Print or Type Name and Number of Prisoner)

    declare under penalty of perjury that the aforesaid statements made by me are true and correct. I authorize the agency having custody over me to assess, withdraw from my prison account, and forward to the Clerk of the District Court for the District of New Jersey (1) an initial partial filing fee equal to 20% of the greater of the average monthly deposits to my prison account or the average monthly balance in my prison account for the six-month period immediately preceding the filing of the complaint, and (2) payments equal to 20% of the preceding month's income credited to my prison account each month the amount in the account exceeds $10.00, until the $ 350.-- fee is paid. 28 U.S.C. § 1915(b)(1) and (2).

    11/9/21

    DATE

    SIGNATURE OF PRISONER

    _____

    THIS PORTION OF YOUR APPLICATION SHALL **NOT** BE LEFT BLANK.
    IF THIS PORTION IS NOT COMPLETED, YOUR APPLICATION WILL BE DENIED WITHOUT PREJUDICE

    ## ACCOUNT CERTIFICATION SIGNED BY PRISON OFFICIAL

    I, **Damian Hadden** (print name), certify that the attached trust fund account statement (or institutional equivalent) is a true and correct copy.

    11/17/21

    DATE

    (Signature)

    BUSINESS MANAGER

    (Title)

3

DNJ-ProSe-007-A-(Rev.05/2013)

**A4**

COZ3BB5                          **NEW JERSEY STATE PRISON**                          OTRTASTA

### TRUST ACCOUNT STATEMENT

### STATEMENT DATE: 05/17/2021 - 11/17/2021

| | | | |
|---|---|---|---|
| **SBI #:** OS01613467 | **Name:** DURHAM, TREMAYNE | **DOB:** 11/04/1974 | |
| **LOCATION:** NJSP-WEST-1 RIGHT-FLATS-CELL 05 | | **INM#** 647007 | |
| **PED:** | **As of Date:** | **Max Rel:** LIFE | |

| LOCATION | SUB ACCOUNT | BEGINNING BALANCE | ENDING BALANCE | HOLD |
|---|---|---|---|---|
| NJSP | 2101 SPENDABLE | 1,439.56 | 431.86 | |

#### DEBTS AND LOANS SUMMARY

| TYPE | PAYABLE | DATE CREATED/INSTITUTION | | ORIGINAL AMOUNT | AMOUNT PAID | AMOUNT OWING | STATUS |
|---|---|---|---|---|---|---|---|
| COL | COMMISSARY LOAN | 12/18/2009 | @ NJSP | 12.47 | 12.47 | 0.00 | ACTIVE |

#### OBLIGATIONS SUMMARY

| TYPE | PAYABLE | INFO / INDICTMENT # | | ORIGINAL AMOUNT | AMOUNT PAID | AMOUNT OWING | STATUS |
|---|---|---|---|---|---|---|---|
| TCF | TRANSACTION COLLECTION FEE | 12082009 | @NJSP | | 0.00 | UNLIMITED | ACTIVE |

#### TRANSACTION DESCRIPTIONS                2101 SPENDABLE SUB ACCOUNT

| DATE | LOCATION | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|---|
| | | | BEGINNING BALANCE: | | 1,439.56 |
| 05/18/2021 | NJSP | POS | POSTAGE-DEPT OF TREASURY IRS | (0.55) | 1,439.01 |
| 05/19/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10265794 | (91.66) | 1,347.35 |
| 05/19/2021 | NJSP | POS | POSTAGE- DEPT. OF CORRECTIONS RECORDS | 0.00 | 1,347.35 |
| 05/19/2021 | NJSP | POS | POSTAGE- MELISSA MATTHEWS | 0.00 | 1,347.35 |
| 05/25/2021 | NJSP | CEC | COMMISSARY RETURN - ORD #10265794 | 8.35 | 1,355.70 |
| 05/25/2021 | NJSP | POS | POSTAGE- MELISSA MATTHEWS | 0.00 | 1,355.70 |
| 05/28/2021 | NJSP | POS | POSTAGE-OREGON STATE PENITENTIARY | (0.55) | 1,355.15 |
| 06/01/2021 | NJSP | POS | POSTAGE- JOHN FALVEY | 0.00 | 1,355.15 |
| 06/02/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (10.00) | 1,345.15 |
| 06/09/2021 | NJSP | POS | POSTAGE- RECORDS CUSTODIAN | 0.00 | 1,345.15 |
| 06/10/2021 | NJSP | POS | POSTAGE- OREGON STATE PENITENTIARY | (0.55) | 1,344.60 |
| 06/10/2021 | NJSP | POS | POSTAGE- UNITED STATES DISTRICT COURT | (0.55) | 1,344.05 |
| 06/11/2021 | NJSP | POS | POSTAGE-RIGHTS BEHIND BARS | (0.55) | 1,343.50 |
| 06/14/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10281780 | (27.32) | 1,316.18 |
| 06/14/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG:3 20 @1.40   05/03/2021-05/31/2021 11A /PAY UN /FPAY /RG:3 10 @1.40   06/01/2021-06/14/2021 | 42.00 | 1,358.18 |
| 06/14/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 1,343.18 |
| 06/14/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 1,358.18 |
| 06/15/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (20.00) | 1,338.18 |
| 06/21/2021 | NJSP | CEC | COMMISSARY RETURN - ORD #10281780 | 1.17 | 1,339.35 |

**A5**

COZ3BB5                          **NEW JERSEY STATE PRISON**                          OTRTASTA

**TRUST ACCOUNT STATEMENT**

**STATEMENT DATE:   05/17/2021   -   11/17/2021**

| | | | | | |
|---|---|---|---|---|---|
| **SBI #:** | OS01613467 | **Name:** DURHAM, TREMAYNE | | **DOB:** | 11/04/1974 |
| **LOCATION:** | NJSP-WEST-1 RIGHT-FLATS-CELL 05 | | | **INM#** | 647007 |

**TRANSACTION DESCRIPTIONS          2101 SPENDABLE SUB ACCOUNT**

| DATE | LOCATION | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|---|
| 06/21/2021 | NJSP | POS | POSTAGE- CLERK OF THE COURT | (0.55) | 1,338.80 |
| 06/22/2021 | NJSP | POS | POSTAGE-CLERK OF COURT USDC | (0.71) | 1,338.09 |
| 06/22/2021 | NJSP | POS | POSTAGE-CLERK OF COURT CLARKSON S FISHER | (0.71) | 1,337.38 |
| 06/22/2021 | NJSP | POS | POSTAGE-CLERK OF COURT CLARKSON FISHER | (0.55) | 1,336.83 |
| 06/24/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10289284 | (17.15) | 1,319.68 |
| 06/24/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 103917844 | (18.00) | 1,301.68 |
| 06/29/2021 | NJSP | POS | POSTAGE-SAMUEL WEISS ESQ | (0.55) | 1,301.13 |
| 07/01/2021 | NJSP | COP | 6 MONTH STATEMENT FOR COURT | 0.00 | 1,301.13 |
| 07/01/2021 | NJSP | COP | MEDICAL RECORDS | (5.00) | 1,296.13 |
| 07/02/2021 | NJSP | POS | POSTAGE | 0.00 | 1,296.13 |
| 07/02/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 104587733 | (12.00) | 1,284.13 |
| 07/07/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 105072313 | (7.00) | 1,277.13 |
| 07/12/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (10.00) | 1,267.13 |
| 07/12/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10299312 | (42.39) | 1,224.74 |
| 07/13/2021 | NJSP | POS | POSTAGE-DEPT OF CORR RECORDS | 0.00 | 1,224.74 |
| 07/14/2021 | NJSP | POS | POSTAGE-P. S. DODSZUEWIT | (0.55) | 1,224.19 |
| 07/15/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG:3 12 @ 1.40   06/15/2021-06/30/2021 | 16.80 | 1,240.99 |
| 07/15/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 1,225.99 |
| 07/15/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 1,240.99 |
| 07/15/2021 | NJSP | POS | POSTAGE-CLERK OFF USDIS CT OF NJ | (0.71) | 1,240.28 |
| 07/15/2021 | NJSP | OPRA | OPRA FEES-19256 | (1.80) | 1,238.48 |
| 07/21/2021 | NJSP | CEC | COMMISSARY RETURN - ORD #10299312 | 4.65 | 1,243.13 |
| 07/21/2021 | NJSP | POS | POSTAGE- BUSINESS OFFICE | 0.00 | 1,243.13 |
| 07/21/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10306276 | (17.90) | 1,225.23 |
| 07/26/2021 | NJSP | POS | POSTAGE- LAWYER, SAMUEL WEISS | (0.71) | 1,224.52 |
| 07/26/2021 | NJSP | POS | POSTAGE- ROSILYNNE POLK, OREGAN STATE | (0.55) | 1,223.97 |
| 07/28/2021 | NJSP | POS | POSTAGE- UNITED STATES MARSHALL | (0.55) | 1,223.42 |
| 07/29/2021 | NJSP | POS | POSTAGE- CUSTODIAN RECORDS | 0.00 | 1,223.42 |
| 07/30/2021 | NJSP | POS | POSTAGE-DOC | 0.00 | 1,223.42 |
| 08/04/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10315745 | (43.97) | 1,179.45 |
| 08/10/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (20.00) | 1,159.45 |
| 08/11/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG:3 21 @ 1.40   07/01/2021-07/30/2021 | 29.40 | 1,188.85 |
| 08/11/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 1,173.85 |
| 08/11/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 1,188.85 |
| 08/12/2021 | NJSP | POS | POSTAGE- COURT OF NJ | (0.55) | 1,188.30 |
| 08/12/2021 | NJSP | POS | POSTAGE- PATRICIA DODZUWELT | (0.55) | 1,187.75 |
| 08/12/2021 | NJSP | POS | POSTAGE- WILLIAM T. WALSH, CLERK OF NJ | (0.91) | 1,186.84 |

**A6**

COZ3BB5        **NEW JERSEY STATE PRISON**        OTRTASTA

## TRUST ACCOUNT STATEMENT

### STATEMENT DATE: 05/17/2021 - 11/17/2021

| SBI #: | OS01613467 | **Name:** | DURHAM, TREMAYNE | **DOB:** | 11/04/1974 |
|---|---|---|---|---|---|
| **LOCATION:** | NJSP-WEST-1 RIGHT-FLATS-CELL 05 | | | **INM#** | 647007 |

**TRANSACTION DESCRIPTIONS      2101 SPENDABLE SUB ACCOUNT**

| DATE | LOCATION | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|---|
| 08/19/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10326830 | (58.09) | 1,128.75 |
| 08/24/2021 | NJSP | POS | POSTAGE-MELISSA MATTHEWS OFFICE | 0.00 | 1,128.75 |
| 08/24/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 108928394 | (1.00) | 1,127.75 |
| 08/26/2021 | NJSP | POS | POSTAGE-MELISSA MATTHEWS | 0.00 | 1,127.75 |
| 08/27/2021 | NJSP | POS | POSTAGE - WILLIAM T. WALSH, CLERK | (55.00) | 1,072.75 |
| 08/31/2021 | NJSP | CDR | CHECK -PRISON LEGAL NEWS-DICTIONARY | (25.95) | 1,046.80 |
| 08/31/2021 | NJSP | CDR | CLERK, US DISTRICT COURT | (505.00) | 541.80 |
| 08/31/2021 | NJSP | CDR | CLERK UNITED STATES DISTRICT COURT | (400.00) | 141.80 |
| 09/02/2021 | NJSP | POS | POSTAGE CLERK OF COURT, US DISTRICT | (0.58) | 141.22 |
| 09/05/2021 | NJSP | JPAY | AUTOPAYMENT: JPAY SETOFF_CODE:134712174 | 300.00 | 441.22 |
| 09/05/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 426.22 |
| 09/05/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 441.22 |
| 09/07/2021 | NJSP | POS | POSTAGE CLERK US DISTRICT COURT | (12.40) | 428.82 |
| 09/08/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (20.00) | 408.82 |
| 09/08/2021 | NJSP | CDR | PARKWAY SPECIALTY FOODS, LLC | (5.85) | 402.97 |
| 09/08/2021 | NJSP | CEC | COMMISSARY RETURN - ORD #10326830 | 0.82 | 403.79 |
| 09/09/2021 | NJSP | POS | REV GL/#24368600 ENTRY ERROR | 55.00 | 458.79 |
| 09/09/2021 | NJSP | POS | POSTAGE; WILLIAM T. WALSH, CLERK | (0.55) | 458.24 |
| 09/10/2021 | NJSP | CDR | PARKWAY | (172.00) | 286.24 |
| 09/12/2021 | NJSP | JPAY | AUTOPAYMENT: JPAY SETOFF_CODE:134925825 | 300.00 | 586.24 |
| 09/13/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10340836 | (53.53) | 532.71 |
| 09/14/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG 3.22 @ 1.40 08/02/2021-08/31/2021 | 30.80 | 563.51 |
| 09/16/2021 | NJSP | CDR | WALKENHORST'S | (59.39) | 504.12 |
| 09/17/2021 | NJSP | CDR | REV GJ/#24375893 CLERK UNITED STATES DIST | 400.00 | 904.12 |
| 09/21/2021 | NJSP | POS | JEFFREY CROTHER, ASSISTANT SUPERINT.NJSP | 0.00 | 904.12 |
| 09/23/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10349575 | (22.89) | 881.23 |
| 09/23/2021 | NJSP | POS | SERGEANT MENDOZA MAIL | 0.00 | 881.23 |
| 09/30/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 112113818 | (8.00) | 873.23 |
| 10/01/2021 | NJSP | POS | POSTAGE-CLERK OF COURT, U.S.DISTRICT | (0.73) | 872.50 |
| 10/04/2021 | NJSP | POS | POSTAGE;CLERK OF COURT, UNITED STATES | (0.58) | 871.92 |
| 10/04/2021 | NJSP | POS | POSTAGE; UNITED STATES MARSHALL SERVICE | (0.58) | 871.34 |
| 10/04/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 112443203 | (8.00) | 863.34 |
| 10/05/2021 | NJSP | CEC | COMMISSARY RETURN - ORD #10349575 | 4.62 | 867.96 |
| 10/06/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10357966 | (53.56) | 814.40 |
| 10/10/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 112977810 | (7.00) | 807.40 |
| 10/12/2021 | NJSP | PACK | PACKAGING CHARGE | (3.80) | 803.60 |
| 10/12/2021 | NJSP | SHIP | SHIPPING CHARGE | (7.37) | 796.23 |

**A7**

COZ3BB5        **NEW JERSEY STATE PRISON**        OTRTASTA

## TRUST ACCOUNT STATEMENT

### STATEMENT DATE: 05/17/2021 - 11/17/2021

| SBI #: | OS01613467 | Name: | DURHAM, TREMAYNE | DOB: | 11/04/1974 |
|---|---|---|---|---|---|
| LOCATION: | NJSP-WEST-1 RIGHT-FLATS-CELL 05 | | | INM# | 647007 |

**TRANSACTION DESCRIPTIONS**      **2101 SPENDABLE SUB ACCOUNT**

| DATE | LOCATION | TYPE | TRANSACTION DESCRIPTION | TRANSACTION AMT | BALANCE |
|---|---|---|---|---|---|
| 10/12/2021 | NJSP | POS | POSTAGE;POLICY DEPARTMENT | 0.00 | 796.23 |
| 10/13/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG:3.21 @1.40 09/01/2021-09/30/2021 | 29.40 | 825.63 |
| 10/13/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 810.63 |
| 10/13/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 825.63 |
| 10/14/2021 | NJSP | POS | POSTAGE-CLERK U.S. DISTRICT COURT NJ | (0.58) | 825.05 |
| 10/18/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (20.00) | 805.05 |
| 10/18/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 113797143 | (50.00) | 755.05 |
| 10/19/2021 | NJSP | AR | AR- WALKENHORST'S -REFUND | 1.30 | 756.35 |
| 10/19/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10367773 | (22.29) | 734.06 |
| 10/20/2021 | NJSP | CDR | ROBERT DURHAM | (100.00) | 634.06 |
| 10/20/2021 | NJSP | POS | POSTAGE-CLERK US DISTRICT COURT | (0.58) | 633.48 |
| 10/21/2021 | NJSP | POS | POSTAGE - ELECTRONIC REPAIR | 0.00 | 633.48 |
| 10/21/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 114074675 | (10.00) | 623.48 |
| 10/25/2021 | NJSP | MED | AUTOPAYMENT: MED 18-OCT-21 | (5.00) | 618.48 |
| 10/25/2021 | NJSP | POS | POSTAGE JEFFREY CROTHERS, ASSISTAN SUPER | 0.00 | 618.48 |
| 10/28/2021 | NJSP | CDR | GET IT DONE SOLUTIONS LLC | (122.00) | 496.48 |
| 10/29/2021 | NJSP | POS | POSTAGE-CLERK, US DISTRICT COURT | (0.58) | 495.90 |
| 11/08/2021 | NJSP | POS | POSTAGE | (0.73) | 495.17 |
| 11/08/2021 | NJSP | CRS | COMMISSARY SALE - ORD #10377495 | (59.85) | 435.32 |
| 11/10/2021 | NJSP | GTL | GTL - PHONE DEBIT PURCHASE | (20.00) | 415.32 |
| 11/12/2021 | NJSP | POS | POSTAGE-CLERK OF COURT US DISTRICT NJ CT | (0.73) | 414.59 |
| 11/12/2021 | NJSP | POS | POSTAGE-KIMBERLY G.WILLIAMS D.A.G. | (0.73) | 413.86 |
| 11/14/2021 | NJSP | JPUR | AUTOPAYMENT: JPUR 116016066 | (10.00) | 403.86 |
| 11/15/2021 | NJSP | FPAY | 11A /PAY UN /FPAY /RG:3.20 @1.40 10/01/2021-10/29/2021 | 28.00 | 431.86 |
| 11/15/2021 | NJSP | DED | $15 DEDUCTION-DISCRETIONARY SPENDING RESERVE PER 10A. | (15.00) | 416.86 |
| 11/15/2021 | NJSP | ADD | $15 DEDUCTION-DISCRETIONARY SPENDING RETURN PER 10A. | 15.00 | 431.86 |
| 11/15/2021 | NJSP | POS | POSTAGE JUDITH JOOHNSON MEDICAL | 0.00 | 431.86 |

**A8**

**CERTIFICATE OF SERVICE**

I, TREMAYNE DURHAM HEREBY CERTIFY that I have placed notice of
appeal and IFP application with 6 month account statement in
regard to Civil Action No. 21-4565(MAS)(LHG)in the hands of the
correctional officer on 1 Right housing unit with postage remit
to be deducted from my account and mailed to the: HONORABLE
MICHAEL A. SHIPP, UNITED STATES DISTRICT JUDGE c/o ClERK, U.S.
DISTRICT COURT, 402 E. state Street, Rm 2020, Trenton, New
Jersey 08608 on the ___18___, day of November, 2021.

Dated November, 18, 2021

Tremayne Durham

#647007/OS01613467

New Jersey State Prison

P.O. Box 861

Trenton, NJ 08625

**A9**

Tremayne Durham
647067
NJSP
P.O. Box 861
Trenton, NJ 08625

050161834-7

CLERK, U.S. DISTRICT
402 E. State Street, Rm 2020
Trenton, New Jersey 08608

TRENTON NJ 085
22 NOV 2021PM 2 L

$ 000.730
PITNEY BOWES
UNITED STATES POSTAGE

08608-150020

**A10**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TREMAYNE DURHAM,

                Plaintiff,

         v.

G. KELLEY, et al.,

                Defendants.

Civil Action No. 21-4565 (MAS) (LHG)

**ORDER**

This matter having been opened to the Court by Plaintiff's filing of a Complaint raising claims under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* ("IFP application") (ECF No. 1), the Court having screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a), and for reasons stated in the Opinion accompanying this Order,

**IT IS** on this _13rd_ day of _October_, 2021, **ORDERED** that:

1. Plaintiff's complaint (ECF No. 1) is dismissed **WITHOUT PREJUDICE** for failure to state a claim for relief.

2. Plaintiff may submit an Amended Complaint within 30 days of his receipt of the Court's Order and accompanying Opinion.

3. The Clerk of the Court shall send a copy of this Order and the accompanying Opinion to Plaintiff at the address on file and shall **CLOSE** the file.

                             **MICHAEL A. SHIPP**
                             **UNITED STATES DISTRICT JUDGE**

**A11**

Case: 21-3187     Document: 17     Page: 57     Date Filed: 04/13/2022

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TREMAYNE DURHAM,

                Plaintiff,

         v.

G. KELLEY, et al.,

                Defendants.

Civil Action No. 21-4565 (MAS) (LHG)

**ORDER**

This matter having been opened to the Court by Plaintiff's October 17, 2021 letter (ECF No. 4) asking the Court to enter a final order in this matter as Plaintiff does not intend to amend his complaint,

**IT IS** on this _8th_ day of November, 2021, **ORDERED** that:

1. The Clerk shall **REOPEN** the case by making a new and separate docket entry reading "CIVIL CASE REOPENED."

2. Plaintiff's complaint (ECF No. 1) is dismissed **WITH PREJUDICE** for failure to state a claim for relief.

3. The Clerk of the Court shall send a copy of this Order to Plaintiff at the address on file and shall **CLOSE** the file.

                                      _____

                                      **MICHAEL A. SHIPP**
                                      **UNITED STATES DISTRICT JUDGE**

**A12**

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TREMAYNE DURHAM,

               Plaintiff,

               v.

G. KELLEY, et al.,

               Defendants.

Civil Action No. 21-4565 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

Plaintiff is incarcerated at New Jersey State Prison in Trenton, NJ. He is proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796, and state law. (Compl., ECF No. 1.) The Court has screened the Complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. As set forth below, the Court will dismiss the Complaint without prejudice for failure to state a claim.

## I.    BACKGROUND

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. This case arises from Defendants' alleged denial of Plaintiff's walking cane while he was in quarantine. Plaintiff names correction officers Kelley, Correa, Gray, Vincente,

**A13**

Rodriguez, Vega, Goodwin, Jovanovic, and Doyle; nurses Spingler, Ebo, and West; "John Doe" doctors; and medical records clerk Johnson as defendants.

In January 2018, medical officials diagnosed Plaintiff with lumbar stenosis, which required epidural steroid injections. (*Id.* ¶ 21.) In November 2019, a doctor prescribed Plaintiff a walking cane for his condition. (*Id.* ¶ 22.)

On May 22, 2020, prison officials told Plaintiff that he needed to go to the quarantine unit. (*Id.* ¶ 22(a).) On his way there, Defendant Doyle told Plaintiff that that he could not bring his cane. (*Id.*) Although Plaintiff explained to Defendant Doyle that Plaintiff needed his cane, Defendant Doyle ordered Plaintiff to leave it in his cell. (*Id.* ¶ 23.) Plaintiff complied. (*Id.*)

The next day, Plaintiff told Defendant Nurse West that he was having excruciating back pain, needed to see a doctor, and would like his cane. (*Id.* ¶ 25.) Nurse West told Plaintiff, "[you] do[ not] need a cane in quarantine and should wait until [you] get[] out to [general] population." (*Id.*) Nurse West also said, "there is nothing I can do for [your] back pain." (*Id.*)

On May 24, 2020, Plaintiff informed Defendant Correa that he was having serious back pain and needed his cane. (*Id.* ¶ 26.) Defendant Correa called Plaintiff's Housing Unit by telephone regarding Plaintiff's access to his cane. (*Id.*) Defendant Goodwin answered and said that Plaintiff "complains too much" and "we're not opening his cell for his cane." (*Id.*) Defendant Jovanovic added that "Plaintiff is an asshole" and "he gets nothing." (*Id.*)

Plaintiff continued to inform prison officials about his back pain and need for his cane. Plaintiff approached Defendant Correa on May 25, 2020, Defendant Vega on May 26, 2020, and Defendant Correa again on May 27, 2020 about his pain and need for his cane. (*Id.* ¶¶ 28, 30, 32.) Plaintiff also told Defendant Nurse Spingler on May 27, 2020. (*Id.* ¶ 32.)

Plaintiff further requested the use of a shower chair and to see a doctor. (*Id.* ¶¶ 34, 36.) On May 27, 2020, he told Defendant Gray that he needed his cane and a shower chair because of

his serious back condition. (*Id.* ¶ 34.) He approached Nurse West again on May 28, 2020 and asked for his cane and a shower chair. (*Id.* ¶ 36.) He also told her he needed to see a doctor. (*Id.*)

Plaintiff requested help for his back pain from Defendant Dr. Maljean on May 28, 2020. (*Id.* ¶ 38.) Dr. Maljean, however, told Plaintiff that he could not help him because he is a mental health doctor. (*Id.*)

Over the next few days, Plaintiff also informed Defendants Harris, Rodriguez, Nurse Ebo, and Kelley of his pain and need for his cane. (*Id.* at ¶¶ 39–44). Each time he asked, however, Defendants refused to provide Plaintiff with his cane or render medical assistance. (*Id.* at ¶¶ 27, 29, 31, 33, 35, 37, 41, 43, 45, 47).

Then, on May 31, 2020, while Plaintiff was in the shower, he experienced excruciating lower back pain that cascaded down his legs. (*Id.* at ¶ 48.) Without the assistance of his cane, shower chair, or shower handrails, Plaintiff fell to the floor in pain. (*Id.*)

Emergency personnel came, lifted Plaintiff off the floor, and placed him in a wheelchair. (*Id.*) Emergency personnel took Plaintiff to the prison clinic trauma room where prison officials gave him pain medication. (*Id.* ¶ 50.) Officials later took Plaintiff to the clinic infirmary, where he remained for several days under observation and medical treatment. (*Id.*)

While Plaintiff was in quarantine between May 22, 2020 and May 31, 2020, there were no forms available to write inquiries, grievances, or make medical requests. (*Id.* ¶ 51.) The Jpay Kiosk, which would have provided Plaintiff a means to write and send inquiries, grievances, and medical requests electronically, was broken. (*Id.*)

In September 2020, Plaintiff told Defendant Johnson that he needed his medical records from May to bring a lawsuit. (*Id.* ¶ 52.) Defendant Johnson told Plaintiff that he would not help Plaintiff sue his co-workers. (*Id.*) Plaintiff made additional requests and filed a grievance, but Defendant Johnson did not provide him with the records. (*Id.* ¶ 53.) Only after the New Jersey

Corrections Ombudsman hand delivered Plaintiff's request for medical records to Defendant Johnson did Plaintiff finally receive his medical records. (*Id.* ¶ 54.) Plaintiff alleges that Defendant Johnson has a pattern and practice of concealing evidence – specifically when inmates request medical records for litigation purposes. (*Id.* ¶ 55.)

## II.    **LEGAL STANDARD**

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), or seeks redress against a governmental employee or entity.  *See* 28 U.S.C. § 1915A(a).  District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* §§ 1915(e)(2)(B), 1915A(b). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678.  Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796, and state law, contending that Defendants' deliberate indifference to Plaintiff's back condition, refusal to provide him with his walking cane and a shower chair, and discrimination against Plaintiff violated his civil rights.  The Court further construes the Complaint as contending that Defendant Johnson further violated Plaintiff's civil rights by denying him access to the courts.

### A. Eleventh Amendment Immunity

As an initial matter, Plaintiff brings claims against Defendants in their official and individual capacities.  (*See* ECF No. 1 ¶¶ 5–20.)  As explained below, the Court will dismiss Plaintiff's claims to the extent they seek non-injunctive relief against Defendants in their official capacities because the Eleventh Amendment bars such claims.

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, the Eleventh Amendment imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).  Moreover, the bar extends to claims against a state official in his or her official capacity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.").

Eleventh Amendment immunity, however, is not absolute.  A state may consent to suit in federal courts, or Congress may abrogate Eleventh Amendment protections.  *See Port Auth. Trans-*

*Hudson Corp. v. Freeney*, 495 U.S. 299, 304 (1990). Further, the Eleventh Amendment does not bar a suit for prospective injunctive relief against a state official who violates federal law, *see Ex parte Young*, 209 U.S. 123, 158–59 (1908), or a suit against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

Here, Plaintiff asserts claims against Defendants in their official and individual capacities for injunctive, compensatory, and punitive damages. (*See* ECF No. 1 ¶¶ 5–20, 73.) All named Defendants, however, are state officials. Accordingly, the Eleventh Amendment bars Plaintiff's claims against Defendants brought in federal court, except for claims against Defendants in their individual capacities and claims seeking injunctive relief against Defendants in their official capacities. *See Will*, 491 U.S. at 71; *Ex parte Young*, 209 U.S. at 158–59. The Court, therefore, will dismiss with prejudice Plaintiff's claims to the extent they seek non-injunctive relief against Defendants in their official capacities because the Eleventh Amendment bars such claims.

**B. Section 1983 Claims**

Having narrowed the scope of Plaintiff's claims and the potential relief available, the Court must now determine whether Plaintiff states a claim under § 1983. As set forth below, Plaintiff fails to state a claim for relief, and the Court will dismiss the remainder of Plaintiff's § 1983 claims without prejudice.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff alleges that Defendants, acting under the color of state law, were deliberately indifferent to Plaintiff's need for his cane and shower chair and denied him access to the courts by hindering his ability to access his medical records. (*See generally* ECF No. 1.)

### 1. Deliberate Indifference Claims

The Eighth Amendment proscribes more than just physically barbarous punishments. *Estell v. Gamble*, 429 U.S. 97, 102 (1976). It also proscribes unnecessary and wanton infliction of pain. *Id.* at 102–03. Deliberate indifference to an inmate's serious medical needs constitutes "unnecessary and wanton infliction of pain[.]" *Id.* at 104.

To state a deliberate indifference claim, an inmate must allege facts showing (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The seriousness of the inmate's medical need may also be determined by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini*, 212 F.3d at 811 (emphasis added). To be found liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). A plaintiff, therefore, must allege and plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Courts in the Third Circuit have found deliberate indifference in a variety of contexts, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it;

(3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017). Regardless of the context, however, the defendant must have, and the plaintiff must allege, the sufficiently culpable state of mind noted above. *Farmer*, 511 U.S. at 838 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

Here, the Complaint satisfies the "serious medical need" prong. Medical officials diagnosed Plaintiff with lumbar stenosis, for which they prescribed nonsteroidal anti-inflammatories and physical therapy. (ECF No. 1 ¶ 21.) A doctor later prescribed a cane for Plaintiff. (*Id.* ¶ 22.) Moreover, Plaintiff's condition allegedly caused him serious and agonizing back pain, and Plaintiff claims to have fallen from the pain. (*Id.* ¶¶ 25, 49.) Such allegations are sufficient to demonstrate a serious medical need. *See Monmouth County*, 834 F.2d at 347.

The Complaint, however, fails to satisfy the "deliberate indifference" prong. Plaintiff fails to allege that each of the Defendants had the requisite mental state, *i.e.*, that each of the Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff by denying him his cane or a shower chair. (*See generally* ECF No. 1.) Nor does Plaintiff plead any facts from which the Court could infer the requisite mental state. (*See generally id.*) Plaintiff alleges that prison officials were aware of his back pain and need for his cane because Plaintiff told them as much. (*See id.* ¶¶ 23, 25–26, 28, 30, 32, 34, 36, 38–40, 42, 44, 46.) At most, Plaintiff alleges that some Defendants intentionally denied Plaintiff's access to his cane. (*See id.* ¶ 26.) But nothing Plaintiff alleges plausibly suggests that Defendants subjectively appreciated a serious risk of harm to Plaintiff if he remained in quarantine without his cane or a shower chair. (*See generally id.*) Plaintiff, therefore, fails to state a deliberate indifference claim. Accordingly, the Court will dismiss without prejudice Plaintiff's deliberate indifference claims.

### 2. Access to Courts Claim

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Two general categories of denial of access to the courts claims exist: (1) claims that systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the impediment has been removed; and (2) claims of specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future. *Christopher v. Harbury*, 536 U.S. 403, 412–14 (2002). Regardless of the category, a plaintiff must identify a "nonfrivolous," "arguable" underlying claim and must address the underlying claim by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at 415–16. In other words, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Under this standard, the Complaint fails to state a claim for relief. Plaintiff alleges that the kiosk for making inquiries and grievances was down while he was in quarantine. (*See* ECF No.1 ¶ 51.) Plaintiff also alleges that he made multiple requests for his medical records for litigation purposes and that Defendant Johnson refused his requests. (*See id.* ¶¶ 52–53.) Plaintiff further alleges that Defendant Johnson has a pattern and practice of denying inmates' requests for medical records for litigation purposes. (*See id.* ¶ 55.) Plaintiff, however, fails to identify an underlying claim for which he will bring or could have brought because he does not allege any actual injury as a result of his inability to access his medical records. (*See generally id.*) The Court, accordingly, will dismiss without prejudice Plaintiff's access to courts claim.

### C. Violation of Rehabilitation Act/Americans with Disabilities Act Claim

Plaintiff also asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796. The Court will dismiss without prejudice Plaintiff's ADA and RA claims for failure to state a claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that Title II of the ADA applies to state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1996). The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "In light of the similarities between . . . the ADA and RA and their implementing regulations, we construe and apply them in a consistent manner." *Disabled Action of Pa. v. Se. Pa. Trans. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011).

To state a claim under either the ADA or RA, an inmate must allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012). A qualified individual with a disability is one "who, with or without reasonable modification to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The implementing regulation defines "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104(2).

The Complaint fails to state a claim under the ADA or RA. Plaintiff alleges that the ADA and RA require Defendants to provide a reasonable accommodation for Plaintiff's disability and that Defendants failed to do so when they withheld access to his cane and medical treatment. (*See* ECF No. 1 ¶¶ 68–70.) The Complaint, however, does not allege that Plaintiff is a qualified individual or that he was subject to discrimination by reason of his disability. *See Brown*, 492 Fed. App'x at 215. Accordingly, the Court will dismiss Plaintiff's ADA and RA claim without prejudice.[1]

### D. State Law Negligence Claims

Finally, Plaintiff asserts state law claims for "evidence concealed or destroyed negligently and negligent spoilation of evidence." (ECF No. 1 ¶¶ 64–65.) The Court will exercise its supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3). For the reasons below, the Court will dismiss Plaintiff's state law claims without prejudice.

New Jersey does not recognize a separate tort for negligent spoilation of evidence. *See Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 122–23 n.6 (2008) (noting that the Court had "not in the past recognized," and "d[id] not now recognize, any separate tort for negligent

---

[1] Even if Plaintiff could state a claim against Defendants, Plaintiff could not maintain an ADA or RA claim against Defendants in their individual capacities because most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *See Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008).

spoilation"). Instead, such a claim may be resolved by applying traditional negligence principles. *Gilleski v. Comm. Med. Ctr.*, 336 N.J. Super. 646, 648 (App. Div. 2001). "To state a cause of action for negligence, a plaintiff must plead: '(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach.'" *Id.* at 652.

Even under traditional negligence principles, the Complaint fails to state a claim. Plaintiff alleges that Defendants, aware that litigation exists or is probable, were aware of and complicit with operating practice and policy that disrupted Plaintiff's access to his medical records. (*See* ECF No. 1 ¶ 65.) The Complaint, however, fails to allege or identify any injury to Plaintiff as a result of Defendants' alleged disruption of Plaintiff's access to his medical records. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the Court will dismiss without prejudice Plaintiff's Complaint. If Plaintiff believes he can allege facts entitling him to relief, he may file an amended complaint. An appropriate Order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE