**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3187
_____

TREMAYNE DURHAM,
                                        Appellant

v.

C.O.R. G. KELLEY; C.O.R. B. CORREA;
C.O.R. W. GRAY; C.O.R. W. VINCENTE;
C.O.R. J. RODRIGUEZ; C.O.R. K. VEGA;
O.F.C. Z. GOODWIN; O.F.C. L. JOVANOVIC;
O.F.C. M. DOYLE; SUSAN SPINGLER;
NURSE MOBOLANLE EBO, RN, BSN;
NURSE NEAL WEST; DOCTOR JOHN DOE #1;
JOHN DOE #2; JOHN DOE #3;
J JOHNSON, Medical Records Clerk
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:21-cv-04565)
Honorable Michael A. Shipp
_____

Argued: March 13, 2023

Before:  RESTREPO, AMBRO, and FUENTES, *Circuit Judges*

(Filed: September 19, 2023)

Oren N. Nimni **[ARGUED]**
Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW
Unit 26152
Washington, DC 20001
　　　*Counsel for Appellant*

Stephanie J. Cohen **[ARGUED]**
Michael Vomacka
Office of Attorney General of New Jersey
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625
　　　*Counsel for Appellee Attorney General New Jersey*

_____

OPINION
_____

FUENTES, *Circuit Judge*.

　　　Plaintiff-Appellant Tremayne Durham appeals from an order dismissing his *pro se* prisoner complaint *sua sponte* at the initial screening stage pursuant to 28 U.S.C. § 1915A. Durham, now represented by counsel, argues that the District Court erred in dismissing his claims under the Americans with

Disabilities Act (ADA), Rehabilitation Act (RA), and Eighth Amendment after prison officials at the New Jersey State Prison (NJSP) took away his cane and refused to provide him with an accessible shower. For the reasons that follow, we will vacate and remand to the District Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Durham is a prisoner at the NJSP in Trenton. In January 2018, a doctor diagnosed him with lumbar stenosis, a medical condition that involves the narrowing of the spinal canal in the lower back. He received epidural steroid injections to manage the pain, and in November 2019 a doctor prescribed him a walking cane for the condition.

On May 22, 2020, prison officials sent Durham to NJSP's quarantine unit. He was told he could not bring his cane with him. Over the next ten days, Durham repeatedly requested his cane back from various prison officials because he was in severe pain, but his requests were denied or ignored.[1]

---

[1] The day after his admission to the quarantine unit, Durham told a nurse, Defendant Neal West, that he was having excruciating back pain, needed to see a doctor, and would like his cane. West responded that Durham did not need a cane in quarantine and that there was nothing he could do for him. The next day, Durham informed Defendant C.O.R. B. Correa that he was having serious back pain and needed his cane. Correa called Durham's housing unit for him regarding access to his cane. Defendant O.F.C. Z. Goodwin responded that Durham "complain[ed] too much" and would not open his cell for the cane, and O.F.C. L. Jovanovic said that Durham was an "asshole" who "gets nothing." A40. In the following days,

He also requested to see a doctor and to use a chair in the shower.[2]  Those requests were also ignored.

On May 31, 2020, Durham experienced severe shooting pain while in the shower.  Without the assistance of his cane, a shower chair, or shower handrails, he fell to the floor.  Prison officials took Durham to the prison clinic via wheelchair, where he received treatment for the pain and remained for several days.

In March 2021, Durham filed a *pro se* complaint in the United States District Court for the District of New Jersey naming various prison officials as Defendants, sued in both their individual and official capacities.  Among other claims, he alleged: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; and (2) violations of the ADA and RA.  As a remedy, Durham sought monetary and injunctive relief.

The District Court screened the complaint pursuant to 28 U.S.C. § 1915A, which requires courts to review prisoner complaints *sua sponte*, and dismissed it without prejudice for failure to state a claim.   The Court concluded that: (1) Durham's claims for money damages against the Defendants in their official capacity as state officials are barred by Eleventh Amendment sovereign immunity; (2) Durham failed to state an Eighth Amendment deliberate indifference claim because he failed to plausibly allege that the prison

---

Durham made many more pleas to different individuals noting his back pain and requesting his cane.

[2] Durham requested to see a doctor and sought a shower chair on May 27 and 28.  A14-15; A41.

officials were "subjectively aware of a substantial risk of serious harm" when they denied Durham his cane and a shower chair; and (3) Durham failed to state a claim under the ADA and RA because he failed to show that he is a qualifying individual with a disability and that the prison officials discriminated against him on that basis. After Durham failed to file an amended complaint, the District Court dismissed the case with prejudice.[3] Durham appeals.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's dismissal of a prisoner's complaint at the § 1915A screening stage under a plenary standard.[4] The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.[5] Complaints filed *pro se* should be construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers."[6]

## III.    DISCUSSION

There are three grounds under 28 U.S.C. § 1915A upon which a district court may dismiss a complaint *sua sponte*: the complaint (1) is frivolous or malicious, (2) fails to state a claim

---

[3] A12.

[4] *Shorter v. United States*, 12 F.4th 366, 370-71 (3d Cir. 2021).

[5] *Id*. at 373.

[6] *Id*. at 371 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

upon which relief could be granted, or (3) seeks monetary relief from a defendant who is immune from suit.[7]  Here, the District Court's dismissal of Durham's Eighth Amendment deliberate indifference and ADA and RA claims was based on his failure to state a claim, and the Court further dismissed his claims on Eleventh Amendment immunity grounds to the extent he sought non-injunctive relief against the defendants in their official capacities.[8]  On appeal, Durham raises three issues as to: whether the District Court erred when it (1) dismissed his ADA and RA claims for failure to state a claim; (2) dismissed his Eighth Amendment deliberate indifference claim for failure to state a claim; and (3) determined that his claims for money damages are barred by sovereign immunity.  As the District Court dismissed the action at the screening stage, Defendants were not served and did not respond to Durham's appeal. Instead, this Court requested the Attorney General to provide a response.

At the outset, Durham sued Defendants in both their individual and official capacities.  The relief that he may obtain if successful under each claim is dependent upon whether the Defendants can be held liable in one, both, or neither capacity. The District Court dismissed all of Durham's claims "to the extent they seek non-injunctive relief [*i.e.*, damages] against Defendants in their official capacities because the Eleventh Amendment bars such claims."[9]

---

[7] 28 U.S.C. § 1915(e)(2)(B).

[8] *See* A13.

[9] A17.  Insofar as the District Court did not automatically dismiss the claims for injunctive relief, this was proper. Officers can be sued for prospective (injunctive) relief in either

The District Court properly dismissed the 42 U.S.C. § 1983 claims insofar as Durham sought damages against Defendants in their official capacities. States, and state officers, if sued in their official capacities for retrospective relief, are not "persons" subject to suit under § 1983; however, state employees in their individual capacities may be liable for damages under § 1983, even when the conduct in question is related to their official duties. But state officers *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment.[10] Thus, unless barred by sovereign immunity, the ADA and RA claims for damages should not have been dismissed.[11] And whether

---

capacity. *See Rochester v. White*, 503 F.2d 263, 266 (3d Cir. 1974).

[10] *See, e.g.*, *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

[11] Briefly, the Attorney General claims that damages can never be sought against state officials; the state is the proper defendant. The same cases that the Attorney General uses to support the contention that state officials may only be sued for injunctive relief bely this argument. When an action "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 318-19 (3d Cir. 2013). Thus, nominal defendants may be sued for damages, but the state may simply invoke sovereign immunity to nullify the complaint.

the ADA or RA validly abrogates sovereign immunity is a question not answered by the Court below.[12]

Therefore, we review whether (1) Durham's ADA and RA (a) official capacity claims should have been dismissed for failure to state a claim and (b) damages claims should have been dismissed due to sovereign immunity; and (2) Durham's Eighth Amendment deliberate indifference claim against Defendants in their individual capacities was properly dismissed.

### 1. <u>Whether the District Court Erred in Dismissing Durham's Claims Under the ADA and RA.</u>

Durham argues that the District Court improperly dismissed his claims under the ADA and RA. We first address whether Durham properly pleaded causes of action under the ADA and RA for damages and injunctive relief. Second, we address whether damages may be awarded to Durham if he is successful in his claim against Defendants in their official capacities or are barred by sovereign immunity.

> A. <u>*The District Court erred in determining that Durham failed to properly plead an ADA/RA claim on the merits.*</u>

---

[12] This Court has not squarely addressed the question of whether claims may be brought against government officers in their individual capacities under Title II of the ADA. *See Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008). We need not do so now because Durham does not challenge the dismissal of his ADA claims under an individual liability theory.

Title II of the ADA[13] provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."[14] Thus, to state a claim under Title II of the ADA, plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability.[15] Where compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard.[16] The elements of a claim under the RA are the same, except that the plaintiff must also show that the program in question received federal dollars.[17]

In dismissing Durham's ADA claim, the District Court stated—without further explanation—that the complaint "does not allege that Plaintiff is a qualified individual or that he was subject to discrimination by reason of his disability."[18] We disagree. First, Durham is a "qualified individual" with a

---

[13] 104 Stat. 337, 42 U.S.C. §§ 12131–65.

[14] 42 U.S.C. § 12132.

[15] *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018).

[16] *Furgess v. Penn. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

[17] *See* 29 U.S.C. § 794; *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). For brevity, we will henceforth refer to the "ADA" to mean both the ADA and the RA, unless noted otherwise.

[18] A23.

disability within the meaning of the ADA. As the District Court acknowledged, the Supreme Court has held that state prisoners are covered by the ADA.[19] Because Durham was diagnosed by a medical professional with lumbar stenosis and received a prescription for a cane for this condition, he demonstrated a disability. Federal regulations define a disability broadly as, among other things, a physical impairment that substantially limits one or more of the major life activities. A physical impairment is a "physiological disorder or condition, . . . or anatomical loss affecting one or more body systems[,]" and "major life activities" include walking and standing.[20]

Second, the District Court did not address the third element of an ADA claim: that the plaintiff was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity. But Durham has alleged that he was denied "services, programs, or activities" within the meaning of the ADA. This Court has previously held that the "provision of showers" in prison qualifies as a service, program, or activity that must be made accessible to people with disabilities under the ADA.[21]

Last, Durham sufficiently pleaded that he suffered discrimination "by reason of his disability." Causation standards differ between the ADA and RA: under the RA, the disability must be the sole cause of the discriminatory action,

---

[19] *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

[20] 28 C.F.R. § 35.108.

[21] *Furgess*, 933 F.3d at 291.

while the ADA only requires but-for causation.[22] Based on the facts as alleged in the complaint, Durham has sufficiently alleged causation under both standards. Refusing to make reasonable accommodations is tantamount to denying access,[23] and the complaint pleads that Durham's requests for a cane and shower chair were repeatedly refused. Durham alleges several instances when he complained of pain and was ignored. This pain caused Durham to have trouble ambulating, and the failure to accommodate his requests kept him from accessing the showers on the same basis as other inmates.[24] Moreover, transfer to the quarantine unit was not a sufficient reason to deny Durham access to his cane and a shower chair.[25]

As previously stated, Durham seeks compensatory damages and so must also show intentional discrimination under a deliberate indifference standard. A claimant must allege "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge."[26] Durham has successfully pleaded an ADA deliberate indifference claim.

---

[22] *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235-36 & n.11 (3d Cir. 2013).

[23] *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

[24] *See id.*

[25] *Furgess,* 933 F.3d at 291–92 (holding that movement to another prison unit is not a sufficient reason to fail to provide accessible facilities or ignore complaints for accessible services).

[26] *See Haberle*, 885 F.3d at 181.

Durham pleaded sufficient facts to demonstrate that the Defendants had knowledge that a federally protected right— his right under the ADA to be free from disability discrimination—was substantially likely to be violated. Durham had a diagnosis of lumbar stenosis, a prescription for a cane, and had received his cane and been using it to walk in the facility prior to his quarantine.  He made numerous prison officials aware that he had a cane, needed a cane to walk, and was in severe pain without it.   Despite this, he was continuously denied his cane and shower accommodations. This alone was sufficient to allege a deliberate indifference claim.  But Durham also pleaded that the denial of reasonable accommodations was intentional.   Indeed, he alleged that denials were based on officials' claims that plaintiff "complain[ed] a lot" and was an "asshole."[27]  Thus, Durham's pleading was sufficient to establish a claim for deliberate indifference under the ADA.

With respect to injunctive relief, Durham pleaded that prison officials were conspiring to withhold his cane from him in the future.[28]   To satisfy the standing and "case or controversy" requirements of Article III, a party seeking prospective relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[29]  Durham appears to properly plead that he will be subjected to the alleged conduct in the future.   Although denials of his cane and shower chair occurred during a ten-day

---

[27] A40.

[28] A44.

[29] *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102–03 (1983)).

quarantine period during the height of the COVID-19 pandemic, he expressed a belief that he will be continuously deprived of these accommodations. Thus, Durham pleaded a claim for injunctive relief.

"As we have stated before, standards of pleading are not the same as standards of proof."[30] We need not express an opinion on whether Durham will ultimately be able to prove his claims. But construing his complaint liberally, as required at this stage, he is a "qualified individual" with a disability who was denied equal access to the showers at the prison, a qualifying public service.

> B. *Whether the District Court erred in finding that sovereign immunity bars Durham's request for money damages.*

Durham argues that the District Court erred in finding that his request for money damages was barred by sovereign immunity. The Attorney General has taken no position on sovereign immunity. But because the District Court addressed it *sua sponte* and held that sovereign immunity bars Durham's claims for money damages, we review the issue now.

The Eleventh Amendment of the United States Constitution states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

---

[30] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 214 (3d Cir. 2009); *Phillips v. County of Allegheny*, 515 F.3d 224, 246 (3d Cir. 2008).

Foreign State."[31]   It imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court,[32] or against a state official in his or her official capacity.[33]   However, a state may consent to suit in federal court, or Congress may abrogate Eleventh Amendment protections.[34]   Congress may do the latter when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.[35]

New Jersey's sovereign immunity does not bar Durham's claim for money damages under the RA because "a state program or activity that accepts federal funds waives its Eleventh Amendment immunity to Rehabilitation Act claims."[36]   Whether New Jersey's sovereign immunity bars money damages under the ADA is a more complicated question that involves determining whether Title II of the ADA validly abrogated the State's sovereign immunity with respect to the claims at issue.[37]   The District Court did not engage in

---

[31] U.S. Const. amend. XI.

[32] *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

[33] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (citation omitted)).

[34] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304-05 (1990).

[35] *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73 (2000).

[36] *Bowers v. Nat'l Collegiate Athletic Ass'n.*, 475 F.3d 524, 545 (3d Cir. 2007).

[37] *See id.* at 550.

14

any such analysis and instead simply assumed that sovereign immunity applied.[38]

In *Board of Trustees of University of Alabama v. Garrett*, the Supreme Court definitively held that the Eleventh Amendment bars private suits seeking money damages for state violations of Title I of the ADA.[39]  However, it left open the question of whether the Eleventh Amendment permits suits for money damages under Title II.  The Court thereafter analyzed this open question in a different context in *Tennessee v. Lane*.[40]  There it held that, as applied to "the accessibility of judicial services," Title II validly abrogates sovereign immunity through Congress's power under § 5 of the Fourteenth Amendment.[41]  But abrogation is a context-by-context analysis, and the Supreme Court has not analyzed the prison context.

To determine whether Congress has abrogated a State's Eleventh Amendment immunity in any given case, we "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority."[42]  Under Title II of the ADA, the first question is answered easily: the Act specifically provides that "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a

---

[38] A18.

[39] 531 U.S. 356, 360 (2001).

[40] 541 U.S. 509 (2004).

[41] *Id.* at 531.

[42] *Id.* at 517.

violation of this chapter."[43]  There is thus an adequate expression of Congress's intent to abrogate a State's Eleventh Amendment immunity.  We must then turn to whether Congress had the ability to give effect to this intent.

The Supreme Court in *United States v. Georgia* explained that there are two ways to establish that Congress had the ability to abrogate a State's Eleventh Amendment immunity.  One way is to follow *Lane*'s three-step method for determining if Congress validly enacted prophylactic legislation under § 5: (1) identify the rights at issue, (2) identify the pattern of violations the legislation is designed to remedy and prevent, and (3) determine whether the legislation is congruent and proportional to the pattern of violations.[44]  The second way is to plead a companion constitutional claim arising from the same facts as the ADA claim.  "While the Members of the Supreme Court have disagreed regarding the scope of Congress's prophylactic enforcement powers under § 5 of the Fourteenth Amendment, no one doubts that § 5 grants Congress the power to enforce . . . the provisions of the Amendment by creating private remedies against the States for *actual* violations of those provisions."[45]

In reversing the dismissal of Durham's § 1983 claims, as described further below, we hold that Durham alleged actual violations of the Eighth Amendment by state agents.  Such conduct would independently violate the Fourteenth

---

[43] 42 U.S.C. § 12202.

[44] *Lane*, 541 U.S. at 522-534; *see City of Boerne v. Flores*, 521 U.S. 507 (1997).

[45] *United States v. Georgia*, 546 U.S. 151, 158 (2006) (internal citations and quotation marks omitted).

Amendment,[46] and "[s]ection 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights."[47]  Insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, it validly abrogates state sovereign immunity.

Here, as in *Georgia*, Durham alleges violations of both Title II and the Eighth Amendment arising from the same conduct.  Because we hold below that Durham has properly pleaded his Eighth Amendment deliberate indifference claims, his parallel claims for money damages against the State under Title II may proceed.  Thus, the District Court improperly concluded that the Defendants here are entitled to sovereign immunity.

## 2. <u>Whether the District Court Erred in Dismissing Durham's Eighth Amendment Individual Capacity Deliberate Indifference Claim.</u>

Durham also argues that the District Court improperly dismissed his claim for deliberate indifference under the Eighth Amendment.  As previewed, we agree.

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of

---

[46] *Id.* at 157 (citing *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463 (1947)) (plurality opinion) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment).

[47] *Id.* at 158 (quoting *Lane*, 541 U.S. at 559–60 (Scalia, J., dissenting)).

17

'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'"[48]  In *Estelle v. Gamble*, the Supreme Court held that this principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration[,]" and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of a pain' . . . proscribed by the Eighth Amendment."[49]

To plead deliberate indifference under the Eighth Amendment, a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff.[50]  The District Court found that Durham pleaded a "serious medical need" but that he failed to allege the requisite mental state for the "deliberate indifference" element: that prison officials knew of and disregarded "an excessive risk to inmate health or safety," meaning a "substantial risk of serious harm."[51]  This is a higher standard than proving deliberate indifference under the ADA, which does not require knowledge of a substantial risk of serious harm, but only that a federally protected right is substantially likely to be violated.[52]

The District Court did not explain why it determined that knowingly taking away Durham's cane and denying him

---

[48] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

[49] 429 U.S. 97, 103–04 (1976) (citation omitted).

[50] *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

[51] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[52] *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013).

an accessible shower failed to satisfy the "deliberate indifference" element. The Attorney General, however, argues that Durham fails to plead this element because he cannot establish that the officials knew of a substantial risk of serious harm. This argument is unavailing.

We have found in other contexts that knowledge of a need for an accessible shower facility—which can be demonstrated by ignoring complaints for such accommodations—combined with a failure to act may establish intentional discrimination or "deliberate indifference."[53] Indifference to a substantial risk of serious harm is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, or a denial of reasonable requests for treatment that leads to suffering or risk of injury.[54] This Court has explained that prison officials may not "deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury."[55]

Durham pleaded that he regularly used a cane to walk and had a prescription for it. Even if not every Defendant saw him previously walking with his cane, Durham still pleaded that he exclaimed to anyone and everyone that he needed *his* cane and was in severe pain. It is not hard to imagine how dangerous a shower could be for someone suffering from back pain and an inability to walk or stand on their own. And

---

[53] *Furgess*, 933 F.3d at 292.

[54] *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

[55] *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (internal quotations and citations omitted).

Durham alleged that, because of the Defendants' denial of care, he experienced an attack of severe pain in the shower that made him fall to the ground, worsening his condition.  These facts, as pleaded by Durham, show deliberate indifference.  Moreover, as described earlier, he alleged that certain Defendants specifically did not help him for non-medical reasons, citing to his penchant for complaining and Defendants' descriptions of him as an "asshole."

Construing Durham's complaint liberally, as we must, he has sufficiently alleged a claim for deliberate indifference under the Eighth Amendment.

## IV.    CONCLUSION

For the foregoing reasons, we will vacate and remand to the District Court for further proceedings.